# EXHIBIT

# 3



28829

OCT-15-1987 12:53pm 87-303382

ORB  5450 Pg 1105

100987-18
0862P/50

DECLARATION OF PROTECTIVE COVENANTS OF

QUANTUM PARK AT BOYNTON BEACH

THIS INSTRUMENT PREPARED BY:
DAVID S. PRESSLY, ESQ.
POST OFFICE BOX 3888
WEST PALM BEACH, FL  33402

RETURN TO:
DAVID S. PRESSLY, ESQ.
POST OFFICE BOX 3888
WEST PALM BEACH, FL  33402

EXHIBIT G

PLTFS 00131

ORB 5450 Pg 1106

## DECLARATION OF PROTECTIVE COVENANTS
## OF QUANTUM PARK AT BOYNTON BEACH

### TABLE OF CONTENTS

| | | PAGE |
|---|---|---|
| ARTICLE I | — | DEFINITIONS.......................... | 1 |
| ARTICLE II | — | PROPERTY............................. | 6 |
| ARTICLE III | — | ASSOCIATION.......................... | 7 |
| ARTICLE IV | — | ARCHITECTURAL REVIEW COMMITTEE...... | 7 |
| Section 4.1 | | The Committee...................... | 7 |
| Section 4.2 | | Necessity of Architectural Review and Approvals.................... | 7 |
| Section 4.3 | | Approval.......................... | 8 |
| Section 4.4 | | Conditions of Approval........... | 9 |
| Section 4.5 | | Powers and Duties................ | 9 |
| Section 4.6 | | Liability........................ | 10 |
| Section 4.7 | | Proviso.......................... | 11 |
| ARTICLE V | — | CONSTRUCTION OF IMPROVEMENTS......... | 11 |
| Section 5.1 | | General........................... | 11 |
| Section 5.2 | | License........................... | 11 |
| Section 5.3 | | Time Requirements................. | 11 |
| Section 5.4 | | Condition During Construction..... | 13 |
| Section 5.5 | | Damage or Destruction............. | 13 |
| Section 5.6 | | Certification..................... | 15 |
| ARTICLE VI | — | GENERAL COVENANTS.................... | 15 |
| Section 6.1 | | General........................... | 15 |
| Section 6.2 | | Use Regulations................... | 16 |
| Section 6.3 | | Drainage and Water Retention...... | 16 |
| Section 6.4 | | Noxious or Offensive Activity..... | 16 |
| Section 6.5 | | Subdivision or Combination of Parcels.... | 16 |
| Section 6.6 | | Hazardous Materials............... | 17 |
| Section 6.7 | | Governing Criteria................ | 17 |
| Section 6.8 | | Rules and Regulations............. | 17 |
| Section 6.9 | | Public Land Use Regulations....... | 17 |
| Section 6.10 | | Notice............................ | 17 |
| Section 6.11 | | Insurance......................... | 17 |
| Section 6.12 | | Quantum Park Ground Water Monitoring Plan | 18 |
| ARTICLE VII | — | COMMON AREAS......................... | 18 |
| Section 7.1 | | Description....................... | 18 |
| Section 7.2 | | Restrictions...................... | 18 |
| ARTICLE VIII | — | HELIPAD/HELIPORT..................... | 19 |
| ARTICLE IX | — | MAINTENANCE, ALTERATIONS AND IMPROVEMENTS...................... | 20 |
| Section 9.1 | | As to Common Areas................ | 20 |
| Section 9.2 | | As to Parcels..................... | 20 |
| Section 9.3 | | As to Outside Land................ | 21 |
| Section 9.4 | | Sand Pine Scrub Preserve Area..... | 22 |
| Section 9.5 | | Platted Streets................... | 22 |
| Section 9.6 | | Inspection by Association......... | 22 |
| Section 9.7 | | Declarant's Right to Enter........ | 23 |
| Section 9.8 | | Insurance Proceeds................ | 23 |

PLTFS 00132

ARTICLE X    -    ASSESSMENTS.................................  23

    Section 10.1    Applicability to Parcels..................  23
    Section 10.2    Uniform Rate of Master Assessments.......  23
    Section 10.3    Amount and Use...........................  24
    Section 10.4    Special Assessments......................  24
    Section 10.5    Due Dates................................  25
    Section 10.6    Certificate..............................  25
    Section 10.7    Lien Rights..............................  25
    Section 10.8    Enforcement of Lien......................  26
    Section 10.9    Proviso..................................  26

ARTICLE XI    -    EASEMENTS.................................  27

    Section 11.1    Easement Rights of Declarant.............  27
    Section 11.2    Easement Rights of Association...........  28
    Section 11.3    Easement Rights of Institutional
                Mortgagees...............................  28
    Section 11.4    Persons Bound; Beneficiaries.............  28

ARTICLE XII    -    OBLIGATIONS OF OWNER ....................  29

ARTICLE XIII   -    STATUS AND WAIVER.......................  30

    Section 13.1    Covenants................................  30
    Section 13.2    Waiver...................................  30

ARTICLE XIV    -    REMEDIES................................  30

    Section 14.1    Rights of Declarant and Association for
                Violation by Owner.......................  30
    Section 14.2    Rights of Declarant for Violation
                by Association...........................  31
    Section 14.3    Rights of Owners for Violation by
                an Owner or Association..................  31
    Section 14.4    Attorney's Fees..........................  31

ARTICLE XV     -    DURATION................................  32

ARTICLE XVI - INSURANCE...................................  33

    Section 16.1    Liability Insurance......................  33
    Section 16.2    Casualty Insurance.......................  33
    Section 16.3    Workmen's Compensation Policy............  33
    Section 16.4    Other Insurance..........................  33
    Section 16.5    Individual Liability Insurance...........  33
    Section 16.6    Waiver of Subrogation....................  33
    Section 16.7    Insurance Regarding Outside Land.........  34

ARTICLE XVII   -    ECOLOGICAL PLAN AND SAND PINE
                PRESERVE AREAS...........................  34

    Section 17.1    General..................................  34
    Section 17.2    Sand Pine Preserve Areas.................  34
    Section 17.3    Swamp and Freshwater Marsh Habitat/
                Wetlands Surface Water Management System.  35

ARTICLE XVIII  -    CONVEYANCE FOR PUBLIC USE...............  36

ARTICLE XIX    -    INTERNAL SECURITY FORCE.................  36

ARTICLE XX     -    AMENDMENT...............................  37

    Section 20.1    General Procedure........................  37
    Section 20.2    Proviso..................................  38

ARTICLE XXI    -    ADDITIONAL LANDS........................  39

PLTFS 00133

ORB 5450 Pg 1108

ARTICLE XXII.     -    RIGHTS APPURTENANT TO LOT 55............    39

ARTICLE XXIII     -    HAZARDOUS WASTE/HAZARDOUS MATERIALS
                      CONTAMINATION RESPONSE PLANS............    40

ARTICLE XXIV      -    NOTICE...................................    42

ARTICLE XXV       "    RIGHT TO MODIFY, CANCEL OR LIMIT.........    42

ARTICLE XXVI      -    ASSIGNMENT...............................    43

ARTICLE XXVII     -    SEVERABILITY.............................    43

ARTICLE XXVIII    -    APPLICABLE LAW/VENUE.....................    43

ARTICLE XXIX      -    CAPTIONS.................................    43

ARTICLE XXX       -    SINGULAR/PLURAL - MASCULINE/FEMININE.....    44

ARTICLE XXXI      -    VETO POWER...............................    44

ARTICLE XXXII     -    DISSOLUTION OF ASSOCIATION...............    45

ARTICLE XXXIII    -    RESTRICTIONS PREVAIL OVER LESS STRINGENT
                      GOVERNMENTAL REGULATIONS.................    45

ARTICLE XXXIV     -    LESSEES..................................    45

ARTICLE XXXV      -    AMENDMENTS TO GOVERNMENTAL LAND USE
                      REGULATIONS..............................    46

ARTICLE XXXVI     -    MORTGAGEE CONSENT AND ACCEPTANCE.........    46

ARTICLE XXXVII    -    EFFECTIVE DATE OF THIS DECLARATION.......    47

EXHIBITS:

   Exhibit "A" - Legal Description of the Property

   Exhibit "B" - Articles of Incorporation

   Exhibit "C" - Bylaws

0062P/S3

VOID COPY

ORB  5450 Pg 1107

101087-18
0862P

### DECLARATION OF PROTECTIVE COVENANTS
### OF QUANTUM PARK AT BOYNTON BEACH

KNOW ALL MEN BY THESE PRESENTS:

WHEREAS, QUANTUM ASSOCIATES, a Florida General Partnership (hereinafter "Declarant"), is the owner of certain lands located in the City of Boynton Beach, Palm Beach County, Florida, which lands (hereinafter "Property") are more particularly described below; and

WHEREAS, the City of Boynton Beach has issued a Development Order pursuant to Chapter 380, Florida Statutes (1984) for development of that portion of the Property rezoned by the City to Planned Industrial Development District, and has rezoned the Property to a Planned Industrial Development District and Planned Commercial Development District; and,

WHEREAS, Declarant desires to place from time to time certain easements, covenants, conditions and restrictions upon the use of the Property and to cause same to benefit, burden and run with the Property;

NOW, THEREFORE, for good and valuable consideration, the said Declarant does hereby for itself and its successors and assigns hereby place upon the Property the following certain easements, covenants, conditions and restrictions.

### ARTICLE I
### DEFINITIONS

The following words, when used in this Declaration (unless the context shall prohibit) shall have the following meanings:

A. Articles of Incorporation: The term "Articles of Incorporation" shall mean and refer to the Articles of Incorporation of the Association, a copy of which Articles are attached hereto as Exhibit "B," as may be amended from time to time.

THIS INSTRUMENT PREPARED BY:          RETURN TO:
DAVID S. PRESSLY, ESQ.               DAVID S. PRESSLY, ESQ.
POST OFFICE BOX 3888                 POST OFFICE BOX 3888
WEST PALM BEACH, FL 33402            WEST PALM BEACH, FL 33402

PLTFS 00135

B.  Assessments:  The term "Assessments" shall include Regular Assessments and Special Assessments, and shall mean and refer to the share of funds required for the payment of Common Expenses, which from time to time are assessed against the Owners.

Association:  The term "Association" shall mean and refer to Quantum Park Property Owners' Association, Inc., a Florida corporation not for profit.

Board of Directors:  The term "Board of Directors" shall mean and refer to the Board of Directors of the Association.

E.  Building Site:  The term "Building Site" shall mean and refer to that portion of the Property being improved in accordance with Articles IV and V herein.

F.  Bylaws:  The term "Bylaws" shall mean and refer to the Bylaws of the Association, a copy of which Bylaws are attached hereto as Exhibit "C," as may be amended from time to time.

G.  City:  The term "City" shall mean and refer to the City of Boynton Beach.

H.  Committee:  The term "Committee" shall mean and refer to the Architectural Review Committee appointed from time to time by the Declarant, as more particularly described in Article IV herein.

I.  Common Areas:  The term "Common Areas" shall mean and refer to all real property (and improvements thereon) owned and/or leased by, or dedicated to, the Association, as more particularly described in Article VII hereof.

J.  Common Expenses:  The term "Common Expenses" shall mean and refer to all costs, expenses and assessments properly incurred by the Association for which the Owners are liable to the Association.

K.  County:  The term "County" shall mean and refer to Palm Beach County.

L.  Declarant:  The term "Declarant" shall mean and refer to QUANTUM ASSOCIATES, a Florida General Partnership, and those successors and assigns to whom Declarant's rights and

0862P

PLTFS 00136

obligations as Declarant hereunder are specifically assigned in writing by Declarant.

M.   Declaration:  The term "Declaration" shall mean and refer to this Declaration of Protective Covenants of Quantum Park at Boynton Beach.

N.   Design Criteria:  The term "Design Criteria" shall mean and refer to the specifications, guidelines, and standards, which, together with this Declaration, regulate the construction, placement, installation, and maintenance of Improvements within the Park.  The Design Criteria shall be prepared and adopted by the Committee, and may be modified and amended in writing by the Committee at any time in its sole and absolute discretion without the joinder, ratification or approval of the Association, any Owner, or any lienholder; provided, however, that any amendment to the Design Criteria concerning the Park's surface water management system must be approved in writing by the South Florida Water Management District.  Any reference to Design Criteria shall include any amendments thereto.  A copy of the Design Criteria shall be available for any Owner upon written request to the Association.

O.   Design Plans:  The term "Design Plans" shall mean and refer to the design plans (and amendments thereto) for Improvements that must be submitted and approved in accordance with the Articles IV and V, herein.  Any reference to any amendment of the Design Plans shall include any change in, alteration of, addition to, or deletion from the Design Plans.

P.   Development Order:  The term "Development Order" shall mean City Ordinance No. 84-51, which ordinance granted with conditions Declarant's application for a development permit with respect to the Park pursuant to Chapter 380, Florida Statutes, as amended by City Ordinance No. 86-11, as further amended by City Ordinance No. 86-37, and as may be further amended from time to time.

Q.   Ecological Plan:  The term "Ecological Plan" shall mean and refer to that certain Ecological Plan For Quantum Park

-3-

0862P

PLTFS 00137

ORB 5450 Pg 1112

(dated August 4, 1986, and amended March 16, 1987) prepared by Ecological Consultants, as may be further amended from time to time, and as more fully discussed in Article XVII herein. Any reference to Ecological Plan shall include any amendments thereto.

Hazardous Materials Contamination Response Plans: The term "Hazardous Materials Contamination Response Plans" shall mean and refer to the document entitled "Guidelines for the Preparation of Owner/Lessee Hazardous Materials Contamination Response Plans" for the Park (as may be amended from time to time) prepared by DRY Environmental Services (dated April 13, 1987), as more fully discussed in Article XXIII herein. Any reference to Hazardous Materials Contamination Response Plans shall include any amendments thereto.

S. Improvement: The term "Improvement" shall mean and refer to any building, sign, exterior lighting, drainage facility, water retention facility, sewage system, road, lake, landscaping, and/or other structure that is constructed, installed, erected, placed or made within or upon the Property, as well as any construction, demolition, excavation, and/or grading, within or upon, and any subdividing (or resubdividing) and/or platting (or replatting) of, or combination of, a Parcel or Parcels.

T. Institutional Mortgagee: The term "Institutional Mortgagee" shall mean any Person owning a mortgage encumbering a Parcel, which in the ordinary course of business makes, purchases, guarantees, or insures mortgage loans. An Institutional Mortgagee may include, but is not limited to, banks, savings and loan associations, insurance companies; union pension funds authorized to lend money in the State of Florida, an agency of the United States or any other governmental authority, a mortgage investment trust, a real estate investment trust, a mortgage company, or a lender generally recognized in the County as an institutional type lender. In addition, in the event that the Declarant is the mortgagee under a purchase money mortgage arising upon the sale of a Parcel, the Declarant shall be deemed to be an Institutional Mortgagee hereunder.

-4-

0862P

PLTFS 00138

ORB 5450 Pg 1113

U.   Lessee:  The term "Lessee" shall mean and refer to any Person who leases from an Owner all or any portion of a Parcel.  The Lessee shall be subject to the terms of this Declaration, and shall have the same obligations as an Owner hereunder.

V.   Master Site Development Plan:  The term "Master Site Development Plan" shall mean and refer to that certain development plan for the Park approved by the City as a part of the Development Order, as may be amended by Declarant from time to time.

W.   Owner:  The term "Owner" shall mean and refer to the record owner or owners of the fee simple title to a Parcel.  In the event that a Parcel is owned by more than one (1) Person, each such Person shall be jointly and severally liable for all of the obligations of an Owner of a Parcel hereunder.

X.   Parcel:  The term "Parcel" shall mean and refer to any platted lot within the Property and/or a part of a platted lot within the Property that is owned in fee simple, together with all Improvements thereon.  A platted lot shall mean and refer to a lot created pursuant to a plat duly recorded in the Public Records of the County.

Y.   Park:  The term "Park" shall mean and refer to Quantum Park at Boynton Beach, subject to Declarant's right to change the name thereof from time to time in Declarant's sole and absolute discretion.

Z.   Person:  The term "Person" shall mean and refer to an individual, corporation, governmental agency, business trust, estate, trust, partnership, association, or two or more persons having a joint or common interest or any other entity.

AA.   Property:  The term "Property" shall mean and refer to that certain property more particularly described in Article II herein.

BB.   Regular Assessment:  The term "Regular Assessment" shall mean and refer to any Assessment levied against Owners that is required by the annual budget.

-5-                                    0862P

PLTFS 00139

ORB 5450 Pg 1114

CC.  Special Assessment:  The term "Special Assessment" shall mean and refer to any Assessment levied against Owners other than a Regular Assessment.

DD.  Subdivide:  The term "subdivide" shall mean and refer to the dividing (or redividing) of a platted lot into two or more Parcels.

EE.  Voting   Representative:   The   term   "Voting Representative" shall mean and refer to (1) the Owner of a Parcel if such Parcel is owned by one individual, (2) any individual designated in a Certificate filed with the Secretary of the Association designating a voting member for such Parcel, or (3) a duly designated proxy holder.  Anything to the contrary herein notwithstanding, there shall only be one (1) Voting Representative for each Parcel.

FF.  Voting Rights:  The term "Voting Rights" shall mean and refer to the number of votes applicable to a Parcel or Parcels.

GG.  Water Management Plan:  The term "Water Management Plan" shall mean and refer to the Park Water Management Plan (as may be amended from time to time) as more fully discussed in Section 6.3 herein; provided, however, that this Water Management Plan is permitted by the South Florida Water Management District, and can only be amended with the prior approval of the South Florida Water Management District.

ARTICLE II

PROPERTY

The Property shall consist of all property that Declarant submits, and makes subject to, the terms of this Declaration.  As of the recording of this Declaration in the Public Records of the County, the property described in Exhibit "A," attached hereto and made a part hereof, shall be and hereby is submitted and made subject to the terms of this Declaration by Declarant.  Additional lands may be submitted and made subject to the terms of this

-6-

0862P

PLTFS 00140

Declaration by Declarant pursuant to Article XXI herein, and at such time the additional lands will automatically become a part of the Property hereunder.

### ARTICLE III
### ASSOCIATION

An Owner shall automatically be a member of the Association, and said Owner and his Parcel shall be subject to the terms and conditions of this Declaration and all exhibits thereto, as same may be amended from time to time.

### ARTICLE IV
### ARCHITECTURAL REVIEW COMMITTEE

Section 4.1  The Committee.  The role of the Committee is to examine and review the design plans in light of the aesthetic impacts of a proposed improvement, and the Committee shall NOT examine, review, or be responsible for the structural, engineering, mechanical, or other related aspects of the proposed Improvement.  The Committee shall consist of three (3) to five (5) persons appointed from time to time by the Declarant; any member of the Committee may be replaced at any time by the Declarant. The members of the Committee are not required to be members of the Association.  The initial members of the Committee shall be Edward B. Deutsch, George W. Zimmerman and Steven W. Deutsch, each of whom shall serve until his successor is appointed, or until he resigns, or until he is replaced, whichever first occurs.  Any vacancy occurring on the Committee shall be filled by the Declarant.  A majority of the Committee shall constitute a quorum to transact business at any meeting of the Committee, and the action of a majority present at a meeting at which a quorum is present shall constitute the action of the Committee.

Section 4.2  Necessity of Architectural Review and Approvals. No Improvement of any kind shall be commenced, constructed, installed, erected, or placed upon or within the Property, nor

-7-

08629

PLTFS 00141

ORB 5450 Pg 1116

shall any amendment, change or alteration of any Improvement be made (except as specifically provided in Section 4.4.D., until such time as the Design Plans with respect thereto have been submitted to and approved in writing by the Committee in accordance herewith. The Design Plans shall be submitted to the Committee in a manner and form satisfactory to the Committee, and shall show the proposed Improvement(s), plot layout, exterior elevations, materials, colors, layout of parking spaces, location of easements, location of utilities, proposed use of the Improvement(s), matters contained within the Design Criteria, and such other information as may be reasonably requested by the Committee. Approval of the Applicant's Design Plans shall not be in lieu of any approvals that may be required by the City, or any other governmental body. IN APPROVING DESIGN PLANS AND/OR ANY AMENDMENTS THERETO, THE COMMITTEE MAKES NO REPRESENTATIONS, WARRANTIES OR CLAIMS AS TO THE SOUNDNESS OR QUALITY OF THE CONSTRUCTION OR DESIGN OF THE IMPROVEMENTS, OR AS TO THE EFFECTIVENESS OR SUITABILITY OF THE USE OF SUCH IMPROVEMENTS, OR AS TO COMPLIANCE WITH ZONING, PERMIT REGULATIONS, OR ANY GOVERNMENTAL LAND USE REGULATIONS.

Section 4.3 Approval. Approval of the Design Plans shall be based upon: (i) the conformity and harmony of the design and layout of the proposed Improvement(s) with neighboring Parcels and with the Park as a whole; (ii) the effect of the location of the proposed Improvement(s) on neighboring Parcels and on the Park as a whole; (iii) the relation of the proposed Improvement(s) to the topography of the Building Site; (iv) the grade and finished ground elevation of the Building Site in relation to that of neighboring Parcels; (v) the proper facing of the main elevation of the proposed Improvement(s) with respect to nearby streets; and (vi) the conformity of the Design Plans with the Design Criteria, and with the terms of this Declaration. The Committee shall either approve or disapprove the Design Plans within thirty (30) days after the Committee's receipt of all documentation required

-8-                                                    0862P

PLTFS 00142

herein. The Committee shall not arbitrarily or unreasonably withhold its approval of the Design Plans. If the Design Plans are not approved, the Committee shall state the reasons therefor.

Section 4.4   Conditions of Approval. In the event of approval of the Design Plans, the following conditions shall apply:

A.   Prior to commencing to improve the Building Site, the Owner, if so required by the Committee, shall provide the Committee with a removal bond, which must be reasonably acceptable to the Committee, for purposes of protecting the Park against any unsightly unfinished construction. The Committee shall not require removal bonds with respect to Parcels in excess of 50 acres in size.

B.   The approved Improvement(s) shall not be used or utilized in any manner until such time as the Owner has provided the Committee with written certification from a duly registered/licensed architect that the Improvement(s) was constructed in accordance with the Design Plans.

C.   There shall be no changes made to the approved Design Plans without the prior written approval of the Committee.

D.   Changes made in the internal layout of a structure shall not be subject to the approval of the Committee as long as such changes are not visible from outside of the structure and do not create any aesthetic impacts upon the Park.

Section 4.5   Powers and Duties. The Committee shall have the following powers:

A.   To adopt, and amend from time to time, the Design Criteria.

B.   To adopt, and amend from time to time, submission requirements for the approval of Design Plans.

C.   To approve or disapprove the Design Plans (and any amendments thereof) submitted hereunder.

D.   To adopt a schedule of reasonable fees for processing requests for Committee approval of proposed Design Plans (and any amendments thereof). Such fees, if any, shall be payable to the Association in U.S. cash or by check at the time

-9-

0862P

PLTFS 00143

that Design Plans (or amendments thereto) are submitted to the Committee. In the event such fees are not paid by the Owner, the Design Plans shall be deemed to be improperly submitted by Owner, and need not be reviewed by the Committee.

To retain professional advisors (such as attorneys and architects) as may be necessary in the exercise of its powers, which contracts shall be paid out of the fees collected in Paragraph D above or from funds of the Association.

F.   To Center upon (or designate an agent or a professional advisor to enter upon) the Building Site(s) from time to time during construction, and upon completion of construction.

G.   To perform such incidental acts as may be necessary in the exercise of its powers.

Section 4.6 Liability.   Neither the members of the Committee nor Declarant (nor their respective partners, shareholders, members, representatives, agents, employees, successors, or assigns) shall be liable in any manner to any Person, by reason of negligence, mistake in judgment, or nonfeasance arising out of or in connection with the approval, disapproval or failure to approve or disapprove the Design Plans, or as a result of failing to carry out their duties hereunder. Each Owner agrees and certifies that he will not bring any action, suit, or other proceeding against the members of the Committee or Declarant, (or their respective partners, shareholders, members, representatives, agents, employees, successors, or assigns) for any negligence, mistake in judgment, or nonfeasance in connection with the Design Plans or the approval or disapproval thereof, or in connection with any other actions taken by the Committee hereunder. IN APPROVING DESIGN PLANS AND/OR ANY AMENDMENTS THERETO, THE COMMITTEE MAKES NO REPRESENTATIONS, WARRANTIES OR CLAIMS AS TO THE SOUNDNESS OR QUALITY OF THE CONSTRUCTION OR DESIGN OF THE IMPROVEMENTS, OR AS TO THE EFFECTIVENESS OR SUITABILITY OF THE USE OF SUCH IMPROVEMENTS, OR AS TO COMPLIANCE WITH ZONING, PERMIT REGULATIONS, OR ANY GOVERNMENTAL LAND USE REGULATIONS.

-10-                        0362P

Section 4.7 Proviso. Anything in this Declaration to the contrary notwithstanding, the following Improvements are exempt from Committee approval, but the construction of same shall be in compliance with all applicable governmental regulations, codes, and ordinances:

Any electrical sub-station constructed on a Parcel owned by a public utility, as well as all other Improvements contained within the safety fence (including) said safety fence) surrounding said electrical sub-station; provided that said safety fence must be set back at least 30 feet from all boundary lines of the Parcel containing said electrical sub-station.

ARTICLE V

CONSTRUCTION OF IMPROVEMENTS

Section 5.1 General. The construction or installation of any Improvement shall not be commenced until the Design Plans for such Improvement have been approved in accordance with Article IV hereunder.

Section 5.2 Licenses. All Design Plans and required permit applications must be prepared and/or stamped by a Florida registered architect and/or engineer, and all construction must be performed by duly licensed contractors and subcontractors. In order to be "duly licensed," the contractors and subcontractors must have obtained all required licenses from all governmental bodies, agencies, departments and the like having jurisdiction thereover, and must have satisfied all other requirements established as conditions precedent to constructing the Improvement.

Section 5.3 Time Requirements.

A. The Owner shall "commence construction" (defined below) of all the Improvements shown in the Design Plans no later than eighteen (18) months following the written approval of the Design Plans by the Committee. Upon commencing construction, the Owner shall proceed expeditiously and diligently without stoppages of longer than five (5) business days. All Improvements shown in

-11-

0862P

PLTFS 00145

the Design Plans shall be "completed" (defined below) within a reasonable period of time, which is not to exceed eighteen (18) months from the date that the Owner commenced construction of the particular Improvement.

The deadlines and other time constraints set forth in this Section 5.3 shall be automatically extended for the period of time that Owner is delayed by factors that are completely outside of Owner's control. In addition, the Committee shall have the power to extend any deadlines and other time constraints set forth in this Section 5.3, provided Owner makes written application therefor and the Committee determines, in its sole discretion, that the request is reasonable.

C.    Failure to comply with the deadlines and/or other time constraints set forth in this Section 5.3 shall result in the termination of the Committee's approval of the Design Plans and Owner will have to obtain approval of his Design Plans from the Committee in accordance with Article IV herein prior to proceeding with the Improvement(s).    Further, in the event that Owner fails to comply with the deadlines and/or other time constraints set forth in this Section 5.3, Owner shall clear and remove the partially completed Improvement from the Park, and restore the Building Site to the condition the Building Site was in prior to commencing construction of such Improvement.    If Owner does not comply with its obligations hereunder, within twenty-five (25) days after notice from the Committee, then the Association or the Declarant (and/or Persons designated by either: (i) may enter upon the Building Site and carry out Owner's obligations at Owner's cost and expense, without being liable in any manner for trespass, and shall have a lien (for the costs and expenses incurred by the Association or the Declarant) against the Parcel containing the Building Site in the same manner as a lien for unpaid Assessments hereunder; (ii) may implement the removal bond; and/or (iii) may pursue any other remedies allowed under this Declaration:

D.    For purposes of this Declaration the Owner shall be deemed to have "commenced construction" upon the issuance of all

PLTFS 00146

necessary building permits required by the applicable governmental
bodies for the construction of the particular Improvement (or, if
no building permits are required, by conducting actual continuous
construction activity upon the Building Site), and an Improvement
shall be deemed to have been "completed" upon the issuance of a
final certificate of occupancy for the particular Improvement by
the governmental body having jurisdiction thereof (or, if no
certificate of occupancy is required with respect to the
Improvement, upon the completion of the Improvement in the manner
shown in the Design Plans).

Section 5.4  Condition During Construction.  The Building Site
shall be kept in a clean, neat and orderly condition during
construction of the Improvements so as not to cause any unsightly
or dangerous conditions.  In the event that the Owner shall fail
to so maintain the Building Site and continues such failure more
than five (5) days following notice thereof from the Association
or the Declarant, the Association or the Declarant (and/or Persons
designated by either) may (1) enter upon the Building Site to
carry out the proper maintenance, and shall have a lien (for the
costs and expenses incurred by the Association or the Declarant)
against the Parcel containing the Building Site in the same manner
as the lien for unpaid Assessments hereunder, or (2) pursue any
other remedies allowed under this Declaration.

Section 5.5  Damage or Destruction.  In the event that a
completed Improvement is damaged or destroyed:

A.  Owner shall take the necessary remedial action to
eliminate any dangerous or unsightly conditions arising from such
damage or destruction (which may require the clearing or other
removal of the damaged or destroyed Improvement from the Park).
The Owner shall commence such remedial action within twenty (20)
days after the date the Improvement is damaged or destroyed, and
shall complete such remedial action within a reasonable time (not
to exceed four (4) months after the date the Improvement is
damaged or destroyed).  If Owner does not comply with its
obligations hereunder, then the Association or the Declarant

-13-

0862P

PLTFS 00147

(and/or Persons designated by either) (i) may enter upon the Building Site and carry out Owner's obligations at Owner's cost and expense, without being liable in any manner for trespass, and shall have a lien (for the costs and expenses incurred by the Association or the Declarant) against the Parcel containing the Building Site in the same manner as a lien for unpaid Assessments hereunder, and/or (ii) may pursue any other remedies allowed under this Declaration.

    B.   After the remedial action in Section 5.5.A. above has been completed:

    (i)  Owner shall "commence restoration" (which shall have the same meaning as "commencing construction" in Section 5.3.D. above) of the damaged or destroyed Improvement no later than twelve (12) months following the date the Improvement was damaged or destroyed.

    (ii)  Upon commencing restoration, the Owner shall proceed expeditiously and diligently without stoppages of longer than five (5) business days. All damaged or destroyed Improvements shown in the Design Plans shall be "fully restored" (which shall have the same meaning as "completed" in Section 5.3.D. above) within a reasonable period of time, which is not to exceed twelve (12) months from the date that the Owner commenced restoration of the damaged or destroyed Improvements.

    (iii)  The deadlines and other time constraints set forth in this Section 5.5.B. shall be automatically extended for the period of time that Owner is delayed by factors that are completely outside of Owner's control. In addition, the Committee shall have the power to extend any deadlines and other time constraints set forth in this Section 5.5.B., provided Owner makes written application therefor and the Committee determines, in its sole discretion, that the request is reasonable.

    (iv)  Failure to comply with the deadlines and/or other time constraints set forth in this Section 5.5.B. shall result in the termination of the Committee's approval of the Design Plans, and Owner will have to obtain approval of his Design

-14-

0862P

PLTFS 00148

ORB   5450 Pg 1123

Plans from the Committee in accordance with Article IV herein prior to proceeding with the Improvement(s). Further, in the event that Owner fails to comply with the deadlines and/or other time constraints set forth in this Section 5.5.B., Owner shall clear and remove the damaged or destroyed Improvement(s) from the Park, and restore the Building Site to the condition the Building Site was in prior to commencing construction of such Improvement(s). If Owner does not comply with its obligations hereunder, within twenty-five (25) days after notice from the Committee, then the Association or the Declarant (and/or Persons designated by either) (i) may enter upon the Building Site and carry out Owner's obligations at Owner's cost and expense, without being liable in any manner for trespass, and shall have a lien (for the costs and expenses incurred by the Association or the Declarant) against the Parcel containing the Building Site in the same manner as a lien for unpaid Assessments hereunder; and/or (ii) may pursue any other remedies allowed under this Declaration.

C.    Anything to the contrary herein notwithstanding, this Section 5.5 shall not apply to any Parcel in excess of fifty (50) acres in size, except that the Owner of such a Parcel shall take the necessary remedial action to eliminate any dangerous conditions arising from such damage or destruction in accordance with the time periods established in Section 5.5.A. above.

Section 5.6 Certification.  Immediately upon completion of construction of an Improvement, the Owner shall provide the Committee with an original certificate from a duly registered/licensed architect certifying that the Improvement was constructed in accordance with the Design Plans.

### ARTICLE VI

### GENERAL COVENANTS

Section 6.1 General.  No Improvement of any kind shall be commenced, constructed, installed, erected, or placed within the Park until the Design Plans for such Improvement shall have been submitted to and approved in writing by the Committee as more fully set forth in Article IV of this Declaration. There shall be

-15-

08527

ORB 5450 Pg 1124

no amendment(s) made to the Design Plans unless and until such amendment(s) have been approved in writing by the Committee in accordance with Article IV of this Declaration (except as otherwise provided in Section 4.4.D. herein).

Section 6.2 Use Regulations. The use of the Property (or any portion thereof) shall be in compliance with the Development Order, and applicable governmental land use regulations (unless a variance therefrom has been duly approved in accordance with the Design Criteria, and by the appropriate governmental body), and the terms of this Declaration, and the use of the Common Areas shall be in compliance with any rules and regulations adopted by the Board of Directors, all as may be amended from time to time.

Section 6.3 Drainage and Water Retention. Drainage and water retention facilities for each Parcel must conform to the Water Management Plan, and must be approved by the South Florida Water Management District. The Water Management Plan has been adopted by the Declarant, and may be amended from time to time by the Declarant, subject to the prior approval by the South Florida Water Management District. A copy of the Water Management Plan shall be provided to each Owner upon written request to the Association.

Section 6.4 Noxious or Offensive Activity. No noxious or offensive activity, including but not limited to, the use of firearms, explosives, hazardous protective devises or booby traps, shall be allowed on any portion of the Property, nor shall an Owner take any action that is or may become a nuisance or annoyance to the other members of the Association. Activity incidental to the proper use of a Parcel under Section 6.2 shall not be considered to be in violation of this Section 6.4.

Section 6.5 Subdivision or Combination of Parcels. No Parcel shall be subdivided (or resubdivided) into two or more Parcels, and no Parcel shall be combined with another Parcel for purposes of development, without the prior written approval of the Committee, the approval of which may be withheld in the sole and absolute discretion of the Committee.

-16-

0862P

PLTFS 00150

ORB 5450 Ps 1125

Section 6.6 Hazardous Materials. The Association and each Owner must comply with the Hazardous Materials Contamination Response Plans, a copy of which shall be provided to each Owner upon written request to the Association (as more fully discussed in Article XXIII herein).

Section 6.7 Governing Criteria. All Improvements within the Park, as well as the use and operation of the Parcels, shall be governed by, and in compliance with, the terms of this Declaration and the Design Criteria.

Section 6.8 Rules and Regulations. Each Owner and Parcel shall be subject to any rules and regulations (governing the use and operation of the Common Areas) adopted by the Board of Directors pursuant to the Bylaws.

Section 6.9 Public Land Use Regulations. The minimum standards, rules, and regulations of any applicable governmental body, board, agency or the like shall be complied with by each Owner (subject to Article XXIII herein). In addition, in the development, use, and operation of a Parcel, an Owner must comply with all applicable governmental permits pertaining to the development, use, and operation of the Park as a whole, including those permits issued by governmental bodies, districts, boards, departments and agencies.

Section 6.10 Notice. Any Owner (other than Declarant) intending to sell or otherwise transfer his Parcel or the controlling interest in the Owner (where applicable) shall give written notice to the Association of such intention within twenty (20) days after the execution of the document reflecting such intention or, if no written document is involved, within twenty (20) days after the oral agreement to sell or otherwise transfer the Parcel or controlling interest. Such notice shall include the name of the proposed transferees and/or assignees.

Section 6.11 Insurance. In the event that an Owner's use of his Parcel causes an increase in the cost of insurance for the Common Areas or any other Parcel, then such Owner shall be responsible for paying such increase in cost.

-17-

0862P

PLTFS 00151

.ORB  5450 Pg 1126

Section 6.12  Quantum Park Ground Water Monitoring Plan.  The Association and each Owner must comply with the Quantum Park Ground Water Monitoring Plan dated August, 1987, prepared by Resource Engineering and Planning, Inc. and approved by the South Florida Water Management District, which Monitoring Plan may be amended by Declarant from time to time subject to the prior approval by the South Florida Water Management District.

## ARTICLE VII
## COMMON AREAS

Section 7.1  Description.  All real property (and Improvements thereon) owned and/or leased by, or dedicated to, the Association shall constitute "the Common Areas."  The Association shall accept the appropriate interest in and to all property conveyed, leased and/or dedicated to it by the Declarant.

Section 7.2  Restrictions.  Each Owner shall have a right and an easement to enjoy and use the Common Areas for the purposes intended' (which right and easement shall be appurtenant to and shall pass with the title to every Parcel), subject to:

A.    all provisions and terms of this Declaration and the Exhibits hereto;

B.    the rules and regulations adopted from time to time by the Board of Directors;

C.    all restrictions of public record;

D.    the right of the Association to dedicate or transfer all or any part of its right, title and interest in the Common Areas (or part thereof) to any public agency, authority, governmental body, unit of local government, or utility (in which event, such property shall no longer be a part of the Common Areas unless otherwise designated as Common Areas in writing by the Association and the grantee);

E.    the right of the Declarant or the Association to take such steps reasonably necessary to protect the Common Areas against damage.

F.    the right of the Association to properly maintain, repair, and improve the Common Areas.

-18-                                0862P

ORB 5450 Pg 1127

G.    the rights and easements of other Owners in and to the Common Areas.

H.    the rights of the general Public to use for the purposes intended all roadways and streets that are a part of the Common Areas.

I.    the right of the Declarant and/or the Association to enter into agreements with "outside owners" for purposes of allowing such "outside owners" to use the Common Areas (or a part thereof) for the purposes intended.  For purposes of this Declaration an "outside owner" shall mean a Person that owns land that is not a part of the Property.

## ARTICLE VIII

### HELIPAD/HELIPORT

The Association hereby reserves the right to construct and install a helipad or heliport or related facility (collectively referred to as "helicopter facility") within the Common Areas. All costs associated with constructing, installing, maintaining, operating, repairing, and improving the helicopter facility, as well as all costs associated with the licensing and permitting thereof, shall be assessed as a part of the Common Expenses. However, anything to the contrary herein notwithstanding, no portion of the Common Expenses attributable to the helicopter facility shall be assessed against any Parcel in excess of fifty (50) acres in size, unless the Owner thereof notifies the Association that said Owner elects to waive its exemption rights under this Article VIII, in which case said Parcel shall then become subject to its share of the Common Expenses attributable to the helicopter facility.  Unless and until the Owner of a Parcel in excess of fifty (50) acres elects to waive its exemption rights under this Article VIII, such Owner shall have no right to use the helicopter facility.  In the event that the licensing and/or permitting process requires the consent of any Owner, each Owner hereby appoints the Association to act as the Owner's agent throughout the licensing and/or permitting process, and agrees to

-19-

0862P

PLTFS 00153

ORB 5450 Pg 1128

execute the necessary application and/or consent forms required by the licensing and/or permitting authorities.

ARTICLE IX

MAINTENANCE, ALTERATIONS AND IMPROVEMENTS

Section 9.1 As to Common Areas.

A. Association's Responsibility: Except as otherwise provided in this Article IX, the Association shall be responsible for the maintenance, repair, replacement, and improvement of the Common Areas and such expenses (except as otherwise provided in this Declaration) shall be treated as and paid for as a part of the Common Expenses. However, should the need for maintenance, repair, replacement, or improvement be caused by the negligence of, or misuse by, an Owner, his Lessee(s), guests, or invitees, said Owner shall be solely responsible for the costs of such maintenance, repair, replacement, and/or improvement; and, the Association shall have a lien against such Owner's Parcel in the amount of such costs, which may be foreclosed in the same manner as a mortgage against real property.

B. Maintenance Contracts: The Association may enter into a contract with any Person for the management, operation, and/or maintenance of the Common Areas, and/or any portion thereof, and may delegate to such Person all the powers and duties of the Association, except as otherwise prohibited under the Declaration, the Bylaws or Articles of Incorporation, and/or the laws of the State of Florida.

Section 9.2 As to Parcels. Except as otherwise provided in this Declaration, each Owner shall have the obligation, at his sole cost and expense, to maintain his Parcel in a safe, clean and attractive condition at all times, in accordance with the aesthetic standards established for the Park. In this regard, the Owner shall comply with this Declaration, the Rules and Regulations adopted by the Board of Directors, and the Design Criteria, and shall be obligated to operate its drainage and water management system in a manner that complies with the Park's drainage and water management system.

-20-

0862P

PLTFS 00154

Section 9.3  As to Outside Land.

A.  General.  The Association has the authority to maintain, repair, replace and improve (i) land that is not a part of a Parcel or a part of the Common Areas, and/or (ii) land that is not included within the Property, collectively the "outside land," pursuant to an agreement(s) with the owner(s) of said outside land.  In connection with such agreement(s) the Association is authorized to provide the owner of the outside land with sufficient insurance and/or indemnification to protect such owner against any loss, cost, damage or expense arising out of said agreement.  The expenses incurred by the Association under such agreements shall be deemed to be a part of the Common Expenses.

B.  Street Lighting.

(i)  The Association has the authority to enter into an agreement(s) with the City regarding the street lighting on N.W. 22nd Avenue and/or High Ridge Road (north of N.W. 22nd Avenue).  Pursuant to such agreement(s) the Association would be responsible for all or a part of the costs associated with the maintenance and repair of such street lighting.  With respect to said agreement(s), the Association is also authorized to agree to reimburse the City for the increase in the cost of insurance to the City caused by locating the street lighting within the median of the above-referenced roads.

(ii)  In the event that the Association fails to comply with its payment obligations under any agreement entered into with the City under this Section 9.3(B), each Owner hereby agrees to contribute to the City his "proportionate share" of such payment obligations (each Owner's "proportionate share" being determined in accordance with the formula described in Section 10.2 of this Declaration).  If an Owner fails to contribute his proportionate share of such payment obligations within ten (10) days after receipt of written notice from the City, then the City shall have a lien against such Owner's Parcel in the amount of (b) the Owner's proportionate share of the Association's payment

-21-

0862P

PLTFS 00155

ORB 5450 Pg 1130

obligations, (b) interest thereon (from the date of the notice) at the highest rate allowed by law, and (c) reasonable attorney's fees and other administrative costs incurred by the City in enforcing its rights against such Owner. The City shall have the right to foreclose such lien in the same manner as a mortgage against real property.

(ii) Specific reference to a street lighting agreement under this Section 9.3.B. shall not in any way limit the Association's authority under Section 9.3.A. above.

C. N.W. 22nd Avenue. It is contemplated by appropriate governmental bodies and agencies that N.W. 22nd Ave. will be widened in the future to a 6-lane section. At such time as N.W. 22nd Ave. is so widened, the curbing and landscaping located within the public right-of-way abutting the Property shall be removed by the Association at the Association's cost and expense.

Section 9.4 Sand Pine Preserve Areas. Anything to the contrary herein notwithstanding, the areas designated as sand pine preserve areas in the Ecological Plan and the areas otherwise required by the Treasure Coast Regional Planning Council or the City to be preserved as sand pine preserve areas, shall be maintained, repaired, replaced, and improved in accordance with Article XVII hereunder.

Section 9.5 Platted Streets. Streets and roadways dedicated to the Association pursuant to a plat or plats of the Property (or a portion thereof) duly recorded in the public Records of the County, shall be maintained by the Association in accordance with the City's standards for maintaining public streets and roadways.

Section 9.6 Inspection by Association. Each Owner shall allow the Board of Directors (and the Board's agents and employees) to enter upon his Parcel for the purpose of inspecting same to determine if there are any factors or other matters threatening the Property (or any portion thereof) and/or to determine if the Owner and his Parcel are in compliance with the provisions of this Declaration and the Exhibits hereto. Except in the case of a bona fide emergency, such entry shall be made at

-22-

0862P

PLTFS 00156

reasonable times and with reasonable advance notice. The right of
entry and inspection granted under this Section shall not apply to
that part of a Parcel that is located within the confines of a
safety fence surrounding an electrical substation owned by a
public utility company.

Section 9.7 Declarant's Right to Enter.  The Declarant and
its designees, shall be entitled to enter upon any Parcel for
purposes of constructing, installing, altering, repairing,
replacing and/or relocating utility, communications, and security
lines, cables, wires, pipes, and other utility, communications and
security facilities; provided, however, that in such event
Declarant shall fully restore and repair the Parcel from the
effects of such actions.

Section 9.8 Insurance Proceeds.  Whenever an Owner is
responsible for any loss or costs covered by insurance maintained
by the Association, the proceeds of the insurance received by the
Association for such loss or costs shall be used for the purpose
of the necessary maintenance, repair or replacement, and such
Owner shall be required to pay all of the costs thereof that
exceed the amount of the insurance proceeds.

ARTICLE X

ASSESSMENTS

Section 10.1 Applicability to Parcels.  Commencing as of the
date that this Declaration is recorded in the Public Records of
the County, each Parcel (except as provided in Section 10.9
herein), shall be, subject to Assessments as more specifically
provided for in this Declaration and the Bylaws, respectively.  No
Owner may waive or otherwise escape liability for Assessments,
provided for herein by non-use of any of the property or services
within or outside the Park, except as specifically provided in
this Declaration.

Section 10.2 Uniform Rate of Master Assessments.  All
Assessments shall be at a uniform rate for each acre (and portion
thereof) of each Parcel (not otherwise exempt under Section 10.9

-23-

0862P

PLTFS 00157

OR 5450 PG 1132

below) in the Park. All Assessments shall be borne proportionately by each Owner based upon the number of acres (and portion thereof) within his Parcel in relationship to the aggregate number of acres (and portion thereof) within all Parcels in the Park. In determining the aggregate number of acres (and portion thereof) within all Parcels in the Park, the exempt property described in Section 10.9 below shall be excluded.

Section 10.3 Amount and Use. The Regular Assessments and other charges collected by the Association shall be in an amount sufficient to pay all costs, expenses, and liabilities incurred by the Association, including but not limited to costs, expenses and liabilities incurred in regards to (a) the administration, maintenance, installation, repair, replacement, and operation of the Common Areas and other property for which the Association is responsible hereunder, (b) the administration and operation of the Association, (c) carrying out the purposes and duties of the Association, and (d) obligations for the payment of property taxes and assessments against and insurance coverage for the Association's property, legal and accounting fees, security costs, management fees, utilities used upon the Common Areas, cleaning services, expenses and liabilities incurred by the Association in the enforcement of its rights and duties against Owners or others, the creation of reasonable reserves, and all other expenses deemed by the Board of Directors to be necessary and proper for management, maintenance, repair, operation, administration and enforcement. Any portion of the Assessments and other charges remaining after the disbursements required hereby shall be used for the promotion of the peace, health, safety, or general welfare of the Park.

Section 10.4 Special Assessments.

A. The Association, through its Board of Directors, shall also have the power and authority to levy and collect Assessments designated as Special Assessments for the following purposes: the acquisition of property directly benefitting the Park; the construction, reconstruction, unexpected repair or

-24-                                    0862P

ORB 5450 Pg 1133

replacement of a capital improvement, including the necessary
fixtures and personal property related thereto; the payment of the
sums necessary to indemnify each Director and Officer of the
Association in accordance with the terms of this Declaration and
the Exhibits attached hereto; and the payment of other costs,
expenses, and liabilities not anticipated at the time of the
adoption of the annual budget. All notices of Special Assessments
from the Association to the members shall designate the date when
the Special Assessment is due.

B.  The Association may levy an emergency Special
Assessment when, in the sole determination of the Board of
Directors, there is potential danger of damage to persons or
property. Such emergency Special Assessments may be utilized to
pay for preventative, protective or remedial construction,
reconstruction, improvements, repairs or replacements. Events
justifying emergency Special Assessments include, but are not
limited to, hurricanes, floods, and fires. Emergency Special
Assessments shall be collectible from Owners in such manner as the
Board of Directors shall determine.

Section 10.5  Due Dates. The Assessments shall be due and
payable on the date or dates fixed by the Board of Directors as
the due date, and such Assessments shall be payable in advance in
monthly, quarterly, semi-annual or annual installments, as
determined by the Board of Directors.

Section 10.6  Certificate. The Association shall, upon
demand at any time, furnish to any Owner liable for a particular
Assessment, a certificate in writing signed by an officer of the
Association, setting forth whether said Assessment has been paid.
Such certificate shall be conclusive evidence of payment of any
Assessment therein stated to have been paid.

Section 10.7  Lien Rights. All Assessments, together with
interest thereon from the due date at the maximum rate allowed by
law, and the cost of collection thereof (including reasonable
attorneys', fees and administrative charges incurred by the
Association), shall constitute a continuing lien on the Parcel

-25-

0862P

PLTFS 00159

ORB 5450 Pa 1134

that shall bind such Parcel in the hands of the Owner, his heirs, devisees, personal representatives, successors and/or assigns, and shall also be the continuing personal obligation of the Owner of the Parcel. A Claim of Lien pertaining to said lien, stating the description of the Parcel, the name of the Owner, the amount due, and the due date may be recorded in the Public Records of the County by the Association at such time as an Assessment is not paid when due.

Section 10.8  Enforcement of Lien.  Through its Board of Directors the Association may bring an action to foreclose the Claim of Lien against the Parcel in like manner as a foreclosure of a mortgage on real property, and/or bring a suit on the personal obligation against the Owner, and there shall be added to the amount owed, the cost of preparing and filing the complaint in such action (including reasonable attorneys' fees), and in the event a judgment is obtained, such judgment shall also include interest on the obligation as above provided, the cost of collection (including reasonable attorneys' fees incurred in the action), and the costs of the action.

Section 10.9  Proviso.

A.    Anything to the contrary herein notwithstanding, the following Parcels shall be exempt from the obligation to pay Assessments hereunder:

(1)    Any Parcels owned by Declarant that are designated as sand pine preserve areas in the Ecological Plan (as may be amended from time to time), or any Parcels owned by Declarant that are required by the Treasure Coast Regional Planning Council or the City to be preserved as sand pine preserve areas.

(2)    That certain Parcel designated as Lot 51-B in that certain Quantum Park at Boynton Beach, P.I.D. Plat No. 4, recorded in Plat Book 57, at pages 186 through 188, inclusive, in the Public Records of the County, but said Parcel shall be exempt hereunder only for so long as said Parcel is held for use by Florida Power & Light Company as an electrical substation.

-26-                                    0862P

PLTFS 00160

ORB 5450 Pg 1135

(3) Any Parcel owned by the Association.

B. When an Institutional Mortgagee or other Person becomes an Owner upon the foreclosure of the mortgage owned by the Institutional Mortgagee or as a result of a deed given in lieu of foreclosure of such mortgage, such Institutional Mortgagee or other Person (and their successors and assigns) shall not be liable for the unpaid share of Assessments attributable to the subject mortgaged Parcel which became due prior to the acquisition of title of the mortgaged Parcel by such Institutional Mortgagee or other Person, as a result of the foreclosure, or deed in lieu of foreclosure, unless the unpaid share of the Assessments is secured by a claim of lien for Assessments that was recorded prior to the recording of the subject mortgage owned by the Institutional Mortgagee. The unpaid share of Assessments that is subordinated under this Section 10.9.B. shall constitute a part of the Common Expenses collectible from all of the Owners, including such Institutional Mortgagee or other Person. Except as otherwise provided in this Section 10.9.B., an Institutional Mortgagee (or other Person) becoming an Owner upon the foreclosure of the mortgage owned by the Institutional Mortgagee or as a result of a deed in lieu of the foreclosure thereof (and their successors and assigns) shall be liable for assessments in the same manner as all other Owners in the Park.

## ARTICLE XI
### EASEMENTS

Section 11.1 Easement Rights of Declarant. Declarant reserves unto itself, its designees, successors and assigns, perpetual easements over, upon, across, under, and/or through the Property (or any portion thereof), at any time, without the need for any joinder, ratification or consent by the Association, any Owner, or any lienholder, provided, that said easements so reserved shall not (i) materially interfere with the uses for which the Property or any portion thereof are intended and/or (ii) create an unreasonable safety hazard. If requested, the

-27-

0862P

PLTFS 00161

Association, Owners and/or lienholders shall join in documents specifically describing the easements reserved hereunder for purposes of evidencing same. It is understood that such easements may be used at Declarant's, (or its designee's, successor's, or assigns') option for any purpose, including, but not limited to, constructing, installing, using, maintaining, repairing, inspecting, extending and/or replacing any and/or all improvements and systems related to the Park and/or the Development Order facilities reasonably necessary to service or market the Park; monitoring wells; electric, gas, water, sewer, security, drainage, irrigation, and all utility systems (including, but not limited to, telephone, radio, cable television, satellite master antenna television, cable distribution, and all communications systems); landscaping and water areas; pedestrian access; and/or loading operations. In addition, such easements reserved hereunder may be used for purposes of dredging any lakes and/or water management tracts within the Park; for hauling any fill, dirt, or other materials arising from the development of the Park; and for harvesting sand from sand pine areas and for forming additional sand pine preserve areas.

Section 11.2 **Easement Rights of Association.** The Association shall have the power, through its Board of Directors, to grant to any Person perpetual easements over, upon, under, across and/or through the Common Areas, in its own name and without the joinder or approval of any Owner or lienholder; provided that said easements so created shall not materially and permanently interfere with the uses for which the Common Areas or any portion thereof are intended.

Section 11.3 **Easement Rights of Institutional Mortgagees.** An easement is hereby granted to each Institutional Mortgagee for the purpose of access to the property subject to its mortgage.

Section 11.4 **Persons Bound; Beneficiaries.** The easements set forth in this Article XI shall run with the land and shall be binding upon every Owner and every claimant of the Property or any

-28-

0862P

portion thereof or of any interest therein, and their respective heirs, executors, administrators, personal representatives, successors and assigns and all Persons claiming by, through or under such Persons. No action shall be taken that would significantly interfere with the easement rights set forth herein. Should the intended creation of any easement fail for any reason, then any such easement deemed not to be so created shall nevertheless be considered as having been granted directly to the Association for the purpose of allowing the original party or parties to whom the easements were originally granted or reserved the benefit of such easement, and the Owners designate the Declarant and/or Association as their lawful attorney in fact to execute any instrument on their behalf as may hereafter be required or deemed necessary for the purpose of creating or reserving such easement.

## ARTICLE XII
### OBLIGATIONS OF OWNER

Each Owner, by becoming such, agrees that he shall be personally responsible for the payment of all obligations that may become liens against his Parcel pursuant to this Declaration. Further, the amount of any lien granted to the Declarant and/or Association hereunder shall include, but not be limited to, the costs of enforcing the lien (including, but not limited to reasonable attorney's fees), and each such lien may be foreclosed in the same manner as a mortgage against real property. Further, in the event that an Owner owns more than one Parcel, a lien under this Declaration against any Parcel (the "Liened Parcel") owned by said Owner shall also constitute a lien against all other contiguous Parcels owned by said Owner as long as any one of such Parcels is contiguous to the Liened Parcel.

0062D

PLTFS 00163

ORB 5450 Pg 1138

## ARTICLE XIII
### STATUS AND WAIVER

**Section 13.1 Covenants.** The terms contained in this Declaration shall be construed as covenants running with the land and shall inure to the benefit of and be enforceable by the Declarant, the Association (which shall be deemed the agent for all of its members for such purposes), and by any Owner or Owners.

**Section 13.2 Waiver.** The failure of any Person to enforce any covenant or obligation herein contained shall in no event be deemed a waiver by that or any other Person of its rights to thereafter enforce the same. No liability shall attach to the Declarant or any Owner for failure to enforce such covenants or obligations.

## ARTICLE XIV
### REMEDIES

**Section 14.1 Rights of Declarant and Association for Violation by Owner.** In the event that an Owner violates or threatens to violate any provision of: (i) this Declaration, (ii) the Rules and Regulations adopted by the Board of Directors, (iii) the Design Criteria, and/or (iv) other rules, restrictions, regulations, and criteria adopted by the Board of Directors or the Declarant in accordance with this Declaration, the Association and/or Declarant shall have the right to:

A.    seek any available relief with law and/or equity, including but not limited to, damages and injunctive relief; and/or

B.    after five (5) days prior notice to the Owner (except in an emergency, when no notice shall be required), enter (or designate the proper Person or Persons to enter) upon the Owner's Parcel and/or any part of the Common Areas and summarily abate, cure, and/or remove any such violation without being liable for any manner of trespass; and/or

C.    charge the Owner for all costs and expenses (including, but not limited to, reasonable attorneys' fees) incurred by the Association and/or Declarant in seeking and/or

0862P

PLTFS 00164

ORB 5450 Pg 1139

enforcing any of the remedies provided for herein, which charge shall constitute a lien against the Owner's Parcel in the same manner, and with the same enforcement rights, as the lien for unpaid Assessments described in Article X herein.

Section 14.2 Rights of Declarant for Violation by Association. In the event that the Association (i) fails to meet the maintenance standards established hereunder, (ii) makes or approves any unauthorized Improvements, (iii) fails to properly carryout its duties, or (iv) otherwise acts in violation of this Declaration or the Exhibits hereto or any rules, regulations, restrictions, and criteria adopted by the Board of Directors or the Declarant in accordance with this Declaration, Declarant, after five (5) days prior notice to the Association, shall have the right to:

A.   enter upon the Property as agent for the Association (which agency is coupled with an interest) and remedy the violation, without being liable for any manner of trespass; and/or

B.   enforce the Association's obligations through any available legal and/or equitable action; and/or

C.   seek any other remedy available in law and/or equity; and/or

D.   be reimbursed for all costs and expenses (including, but not limited to, reasonable attorneys' fees) incurred by Declarant in seeking and/or enforcing any of the remedies provided for herein.

Section 14.3 Rights of Owners for Violation by an Owner or Association. In the event that an Owner or the Association violates or threatens to violate any provision of this Declaration, or any rules and regulations adopted by the Board of Directors in accordance with this Declaration, any Owner (or group of Owners) may seek any remedy available in law and/or equity.

Section 14.4 Attorney's Fees. In the event that attorney's fees are incurred in any level of litigation arising under this Declaration (including, but not limited to, trial and appellate proceedings), the prevailing party shall be entitled to

-31-

0862P

PLTFS 00165

ORB 5450 Ps 1140

reimbursement from the other party (or parties) to the litigation for the costs and reasonable attorney's fees incurred by the prevailing party.

## ARTICLE XV
### DURATION

This Declaration, as amended, shall continue in full force and effect against the Property and the Owners thereof until January 1, 2017, and shall, as then in force, be continued automatically, and without further notice, from such date for periods of ten (10) years each, without limitation, unless at least six (6) months prior to January 1, 2017, or at least six (6) months prior to the expiration of any successive ten-year period, a termination of this Declaration, approved by the City, shall have been recorded in the Public Records of the County (or other proper public recording office). Said termination of this Declaration must be executed and acknowledged by the President (or Vice-President) and Secretary (or Assistant Secretary) of the Association, and must be approved by the affirmative vote of (i) at least two-thirds (2/3) of the Board of Directors, at least seventy five percent (75%) of the Voting Rights in the Park, and the City, or (ii) at least eighty five percent (85%) of the Voting Rights in the Park, and the City. In the event that this Declaration is terminated under this provision, or any other provision or Article contained herein, a similar Declaration shall be executed and recorded in the Public Records of the County, if necessary to insure a continuation of the operational, administrative, and maintenance services performed by the Association hereunder. Declarant shall have no obligations or liabilities with respect to, or arising from, the termination of this Declaration.

-32-

0862P

ORB 5450 Pg 1141

## ARTICLE XVI

### INSURANCE

Section 16.1 Liability Insurance. The Board of Directors shall obtain public liability and property damage insurance covering all of the Common Areas and insuring the Association, the Board of Directors, and the Owners as its and their interests appear in such amounts as the Board of Directors may determine from time to time. If possible, all liability insurance shall contain cross-liability endorsements to cover liability of the Owners as a group to an Owner.

Section 16.2 Casualty Insurance. The Association shall obtain fire and extended coverage insurance, flood insurance, if available, and vandalism and malicious mischief insurance, insuring all the insurable improvements within the Common Areas and all personal property owned by the Association, in and for the interests of the Association, all Owners and their mortgagees, as their interests may appear, in an amount equal to the maximum insurable replacement value of said improvements and personal property as determined annually by the Board of Directors.

Section 16.3 Workmen's Compensation Policy. The Association shall obtain a Workmen's Compensation Policy in an amount sufficient to meet the requirements of law.

Section 16.4 Other Insurance. The Association shall obtain such other insurance as the Board of Directors may determine from time to time to be desirable.

Section 16.5 Individual Liability Insurance. Each Owner shall be responsible for purchasing at his own expense all insurance applicable to his Parcel and the operation of his business thereon. Such insurance, where applicable, shall contain the same waiver of subrogation, if available at a reasonable cost, as referred to in Section 16.6 hereinafter.

Section 16.6 Waiver of Subrogation. If available at a reasonable cost, and where applicable, the Board of Directors shall endeavor to obtain policies which provide that the insurer

0862P

PLTFS 00167

waives its rights of subrogation as to any claims against Owners, the Association, and their respective servants, invitees, agents and guests.

Section 16.7. Insurance Regarding Outside Land. The Association is authorized to obtain and maintain the insurance necessary to comply with any agreement entered into under Section 9.2 herein.

ARTICLE XVII

ECOLOGICAL PLAN AND SAND PINE PRESERVE AREAS

Section 17.1 General.

Each Owner and the Association shall abide by and comply with the Ecological Plan, a copy of which shall be delivered to each Owner upon written request to the Association. The Ecological Plan may be amended from time to time by Declarant, subject to the prior written approval of the City and other governmental entities as may be required by the Development Order.

Section 17.2 Sand Pine Preserve Areas.

A. Declarant's Rights and Obligations.

1. Obligations. Declarant shall be responsible for performing the obligations specifically set forth in the Ecological Plan as being the obligations of Declarant.

2. Rights. The Declarant expressly reserves the right to convey, lease, and/or develop, for industrial, office, or commercial purposes, any areas that are owned by Declarant and designated as sand pine preserve areas in the Ecological Plan, subject to the prior written approval of the City and other governmental entities as may be required by the Development Order. In the event that such sand pine preserve areas are developed for industrial, office, or commercial purposes, such Parcel or Parcels shall be assessed, and shall be maintained by the Owner thereof, in the same manner as other Parcels in the Park.

B. Association's Obligations. Except as provided in Section 17.2.A. above, the Association shall be responsible for operating, maintaining, administering, repairing, and improving

-34-

08620

PLTFS 00168

any areas owned by Declarant within the Property that are designated as sand pine preserve areas in the Ecological Plan and any areas owned by Declarant within the Property that are required by the Treasure Coast Regional Planning Council or the City to be preserved as sand pine preserve areas, and the costs thereof shall be deemed to be a part of the Common Expenses.

C.    Certain Owner's Obligations.  Areas within certain Parcels are designated as contingency areas under the Ecological Plan, and other areas within certain Parcels are required by the Treasure Coast Planning Council or the City to be preserved as sand pine preserve areas, and the Owner of such a Parcel shall have the responsibility for preserving and maintaining such areas accordingly.  This Section 17.2.C. shall not apply to Parcels owned by Declarant, as such Parcels are to be maintained and preserved in accordance with Sections 17.2.A. and 17.2.B. above.

Section. 17.3  Swamp and Freshwater Marsh Habitat/Wetlands Surface Water Management System.

A.    Declarant's Obligations.

1.    The Declarant shall establish or preserve (a) a vegitated littoral zone of hardwood swamp and freshwater marsh habitat, (b) a wetland habitat, and (c) a buffer zone of native upland vegetation around wetland and freshwater habitats which are constructed or preserved by Declarant within the Park, all in accordance with the Development Order.

2.    Upon the establishment of the habitats in (a) and (b) above, Declarant shall implement a 2-year monitoring/ maintenance program to determine the success and survival rates of the planted areas.  The monitoring shall occur twice annually during this 2-year period, and the maintenance shall occur as often as necessary during this 2-year period to control encroachment of pest exotic species.  In the event that an 80% survival rate of the planted wetland species is not achieved at the end of the 2-year period, additional planting shall be undertaken by Declarant to achieve the required survival rates.

0862P

PLTFS 00169

3.   The Declarant's obligations herein may be changed upon written agreement by and among the Declarant, the City, and other governmental entities as may be required by the Development Order.

4.   Association's Obligations.  Except as provided in Section 17.3.A. above, the Association shall be responsible for operating, maintaining, administering, repairing and improving the vegitated littoral zone of hardwood swamp and freshwater marsh habitat within the Common Areas, the wetland and deepwater habitats (and buffer zones of natural upland edge vegetation around same) within the Common Areas, and the Park's surface water management system within the Common Areas.

ARTICLE XVIII

CONVEYANCE FOR PUBLIC USE

Anything to the contrary herein notwithstanding, the Association has the absolute right to dedicate or convey, for public use, its right, title and interest in and to any portion of the Common Areas.  The portion of the Property so dedicated or conveyed hereunder may be maintained by the appropriate governmental body or by the Association.  If the dedicated or conveyed property is to be maintained by a governmental body, the governmental body shall have a right of access to such property for purposes of maintaining said property.

ARTICLE XIX

INTERNAL SECURITY FORCE

An internal security force ("Security Force") will be established within the Park by the Board of Directors.  The Security Force shall be governed by rules and regulations adopted by the Board of Directors, and shall work in cooperation with the City of Boynton Beach Police Department ("Police Department").  The Security Force and the Police Department shall be entitled to use the Association's principal office within the Park (or, if so designated by the Association, a private, centrally-located

-36-                                08627

PLTFS 00170

ORB 5450 Pg 1145

security facility building within the Common Areas) as the Park's security facility ("security facility"), for purposes of coordinating security efforts between the Security Force and the Police Department. All expenses incurred by the Association in connection with this Article XIX shall be deemed to be a part of the Common Expenses; provided, however, that any Owner of a Parcel in excess of fifty (50) acres that maintains its own security force ("private security force") for its Parcel shall not be required to contribute to the expenses incurred by the Association in connection with this Article XIX, as long as such private security force has been approved in writing by the Board of Directors. A private security force shall be approved by the Board of Directors when such private security force protects and secures the Owner's Parcel in a manner at least equal to that of the Park's Security Force. The Security Force shall not enter upon a Parcel that maintains an approved private security force, except in the case of a bona fide emergency.

ARTICLE XX

AMENDMENT

Section 20.1 General Procedure. Except as otherwise specifically provided in this Declaration, any of the terms and provisions in this Declaration may be amended or deleted, and/or new terms and provisions may be created, by an amendment to this Declaration approved by the affirmative consent of sixty-five percent (65%) of the Voting Rights in the Park, except that an amendment changing the method of sharing the payment of Assessments under Section 10.2 herein must be approved by an affirmative consent of one hundred percent (100%) of the Voting Rights in the Park. The amendment shall be evidenced by a Certificate of Amendment executed with the formalities of a deed. The Certificate of Amendment need only be executed by the President or Vice President of the Association and attested by the Secretary or any Assistant Secretary of the Association unless otherwise provided in this Declaration, and shall include the

-37-

0862P

PLTFS 00171

recording data identifying this Declaration and a certification executed by such Officer and attested by such Secretary attached thereto certifying that the amendment was made in accordance with the terms of this Declaration.

Section 20.2 Proviso. Anything to the contrary herein notwithstanding:

A. This Declaration may be amended by Declarant at any time without the joinder, ratification or approval of the Association, any Owner, or any lienholder, where such an amendment is specifically provided for in this Declaration, and, in addition, for the purpose of (i) submitting and subjecting additional lands to the terms of this Declaration as set forth in Article XXX below, and/or (ii) changing the name of the Park. Such Amendment, which shall be recorded in the Public Records of the County, need be executed and acknowledged only by the Declarant, with the formalities of the execution of a deed, and shall include reference to the recording information identifying this Declaration; and no Certificate of the Association shall be required.

B. Until the Declarant specifically elects in writing to terminate this right of consent, all amendments to this Declaration must be consented to in writing by Declarant, and in the absence of such consent the Amendment shall be null and void.

C. Until the City of Boynton Beach specifically elects in writing to terminate this right of consent, any amendment to Section 9.3.B. herein must be consented to in writing by the City of Boynton Beach, and in the absence of such consent the Amendment shall be null and void.

D. Until the South Florida Water Management District specifically elects in writing to terminate this right of consent, any amendment affecting the Park's surface water management system must be consented to in writing by the South Florida Water Management District, and in the absence of such consent the Amendment shall be null and void.

-38-                    0862F

PLTFS 00172

ORB 5450 Pg 1147

## ARTICLE XXI
### ADDITIONAL LANDS

Declarant shall have the right to submit and subject additional land or lands and all improvements thereto and thereon ("Additional Land"), to all or some of the terms of this Declaration by recording in the Public Records of the County an instrument which shall (1) be executed by the Declarant and all record owners of the Additional Land with the formalities of a deed, (2) specify which terms of the Declaration are to apply to such Additional Land, (3) make reference to this Declaration, and (4) contain a legal description of the Additional Land. The Additional Land need not be a part of the land subject to the Development Order, and need not be zoned as a Planned Industrial Development District. Declarant shall have the right to submit and subject such Additional Land to the terms of this Declaration as often as it chooses to do so, in its sole and absolute discretion, and without the joinder, ratification or approval of the Association, any Owner or any lienholder. Upon the submission and subjection of Additional Land to the terms of this Declaration, such land shall be deemed to be a part of the Property and the owners of the Additional Land shall be entitled to enforce the terms of this Declaration, and shall likewise be subject to the terms hereof, as though all of the Additional Land were submitted and subjected to the terms of this Declaration when the Declaration was originally recorded. Declarant shall comply with applicable governmental land use regulations with respect to actions taken under this Article.

## ARTICLE XXII
### RIGHTS APPURTENANT TO LOT 55

Anything in this Declaration (and the Exhibits hereto) to the contrary notwithstanding, the following rights shall be appurtenant to that certain Parcel designated as Lot 55, according to that certain Quantum Park at Boynton Beach, P.I.D. Plat No. 5, recorded in Plat Book 57, at pages 189 and 190, in the Public

-39-

0862P

Records of the County ("Lot 55"), only for so long as the "original Owner" (defined below) of said Lot 55 is the Owner of said Lot:

A.   For purposes of this Article XXII, the "original Owner" of Lot 55 shall be the first Owner of Lot 55 subsequent to Declarant.

B.   The original Owner of Lot 55 shall be entitled to use said Lot 55 as a grocery distribution center without being in violation of this Declaration or the Exhibits hereto (subject to applicable zoning land use regulations).

C.   The original Owner of Lot 55 shall be entitled, unless otherwise precluded by law, to select one (1) member of the Board of Directors at all times, and to select the replacement for such member in the event that such member selected by such original Owner vacates, for any reason, his or her position as a member of the Board of Directors.

D.   The rights granted under this Article XXII shall not be modified or changed without the express written consent of the original Owner of Lot 55.

E.   At such time as the original Owner of Lot 55 is no longer the Owner of said Lot 55, the provisions of this Article XXII shall be null and void.

## ARTICLE XXIII

### HAZARDOUS WASTE/HAZARDOUS MATERIALS CONTAMINATION RESPONSE PLANS

A.   Each Owner that uses, handles, stores, or displays hazardous materials or generates hazardous waste (which shall consist of the 129 priority pollutants, volatile organics, and trace materials referred to in the Clean Water Act, administered by the Environmental Protection Agency, as amended from time to time) must:

(i)  construct an appropriate spill containment system, designed to hold spilled hazardous materials for cleanup and to prevent such materials from entering the storm water

-40-                          08626

PLTFS 00174

drainage system, and serving all structures or areas where hazardous materials are used, handled, stored or displayed, or where hazardous waste is generated; and,

(ii) develop an early warning monitoring program; and,

(iii) remediate any contamination.

The containment system and monitoring program shall be approved by the South Florida Water Management District and the Department of Environmental Regulation.

B.   To the extent applicable, the Association and each Owner shall comply with the terms of the Hazardous Materials Contamination Response Plans (as amended from time to time by the Declarant with the City's prior written approval, in consultation with the South Florida Water Management District, the Palm Beach County Emergency Preparedness Division, the Department of Environmental Regulation, and the Treasure Coast Regional Planning Council).   A copy of the Hazardous Materials Contamination Response Plans shall be delivered to an Owner upon written request to the Association.

C.   Each Owner hereby indemnifies and agrees to hold the Association, the Declarant, and the members of the Committee, and their respective successors, heirs and assigns harmless from and against any loss, claim, liability, and/or damages (including, but not limited to, costs and attorneys' fees) incurred by the indemnified party as a result of any action, suit, investigation, or proceeding pertaining to or arising from the indemnifying Owner's use, storage, handling, release, or introduction into the environment, of any hazardous waste, hazardous materials, regulated chemicals, or other regulated substances.

D.   The Association shall have the authority to purchase the insurance necessary to help protect the Association (and named additional insureds) from any loss, claims and/or liability pertaining to or arising from an Owner's (or Lessee's) use, storage, handling, release, or introduction into the environment, of any hazardous waste, hazardous materials, regulated chemicals,

-41-                    0862F

PLTFS 00175

or other regulated substances, and shall have the authority to name the Declarant and/or the members of the Committee, and their respective successors, heirs and assigns as additional insureds. The cost of such insurance shall be deemed to be a part of the Common Expenses.

ARTICLE XXIV

NOTICE

Any notice or other communication to an Owner (other than Declarant) shall be deemed properly given only when mailed in the U.S. mail or hand delivered to the address of the Owner as set forth in the Association's files. It shall be the Owner's responsibility to keep his address current with the Association. Any notice or other communication to Declarant shall be deemed properly given only when mailed in the U.S. mail, registered mail or certified mail, return receipt requested, to the Declarant at 2455 East Sunrise Avenue, Suite 1106, International Building, Fort Lauderdale, Florida 33404, or such other address provided by Declarant to the Owners and the Association. Any notice or other communication to the Association shall be deemed properly given only when mailed in the U. S. mail, registered mail or certified mail, return receipt requested, or hand delivered (and receipted for), to the Association at 2455 East Sunrise Avenue, Suite 1106, International Building, Fort Lauderdale, Florida 33404, or such other address provided by the Association to the Owners and the Declarant.

ARTICLE XXV

RIGHT TO MODIFY, CANCEL, OR LIMIT

Anything to the contrary herein notwithstanding, Declarant specifically reserves the absolute and unconditional right, without any joinder, ratification or approval of the Association, any Owner or any lienholder, to alter, modify, change, revoke, rescind, limit or cancel any of the terms contained in this Declaration and/or to add new terms to the Declaration, when required to do so by any applicable governmental authority.

-42-

0862F

PLTFS 00176

ORB 5450 Pg 1151

## ARTICLE XXVI
### ASSIGNMENT

Any and/or all of the rights, powers, obligations, easements and estates ("rights and obligations") reserved by or granted to the Declarant hereunder may be assigned by the Declarant. The assignment shall be (a) in writing, (b) recorded in the Public Records of the County, and (c) joined in by the assignee for purposes of evidencing assignee's acceptance of the rights and obligations so assigned. After any such assignment by the Declarant, Declarant shall be relieved and released of all rights and obligations so assigned.

## ARTICLE XXVII
### SEVERABILITY

The determination of any Court that any provision of this Declaration is unenforceable, invalid or void shall not affect the enforceability or validity of any other provisions hereof.

## ARTICLE XXVIII
### APPLICABLE LAW/VENUE

This Declaration shall be interpreted according to the laws of the State of Florida, and the proper venue of any actions arising hereunder shall be Palm Beach County, Florida.

## ARTICLE XXIX
### CAPTIONS

The captions used in this Declaration and Exhibits annexed hereto are inserted solely as a matter of convenience and shall not be relied upon and/or used in construing the effect or meaning of any of the text of this Declaration or Exhibits hereto annexed.

0862P

PLTFS 00177

ORB 5450 Pg 1152

## ARTICLE XXX

### SINGULAR/PLURAL - MASCULINE/FEMININE

Words used herein in the singular shall include the plural (and vice versa), and words in the masculine shall include words in the feminine or neuter gender (and vice versa), unless the text thereof expressly requires the contrary.

## ARTICLE XXXI

### VETO POWER

Until the veto right under this Article XXXI is specifically waived in writing by Declarant, Declarant hereby expressly reserves the right to veto any or all of the following events and/or actions, and upon such veto, such vetoed events and/or actions shall be null and void:

A. Adoption of Association budgets, annual or otherwise, which constitute a change of at least fifteen (15%) percent (over or under) from the prior year's budget;

B. Approval or disapproval by the Committee of any Improvement within the Park;

C. Attempted resubdivision of the Property, or any part thereof;

D. The entering into management contracts by the Association;

E. Attempted relocation, termination, or conveyance of any Common Areas;

F. Assessment for capital improvements imposed by the Association;

G. Attempted settlement of any claim made by the Association to collect upon any policy of casualty insurance which insures the Common Areas;

H. Attempted cancellation or reduction of insurance coverage insuring all or any part of the Common Areas;

I. Attempted dissolution of the Association.

-44-

0862P

PLTFS 00178

### ARTICLE XXXII
### DISSOLUTION OF ASSOCIATION

In the event the Association is dissolved, the Common Areas shall be conveyed to: (1) a non-profit corporation that is organized for purposes similar to those of the Association, or (2) a governmental body or public agency. The entity or entities ("New Entity") to which the Common Areas are conveyed shall then assume the obligations of the Association hereunder regarding said Common Areas, and the New Entity shall have the same assessment, lien and enforcement rights against the Owners and Parcels as the Association has hereunder. In the event that no such conveyance is made under (1) or (2) above, and the Association is dissolved, the Association shall, nevertheless, continue to exist as an unincorporated membership organization with the same rights and obligations of the Association hereunder.

### ARTICLE XXXIII
### RESTRICTIONS PREVAIL OVER LESS STRINGENT
### GOVERNMENTAL REGULATIONS

Where the covenants and restrictions set forth in this Declaration impose minimum standards more stringent than governmental standards and regulations, the covenants and restrictions in this Declaration shall prevail, unless otherwise precluded by Florida law.

### ARTICLE XXXIV
### LESSEES

Owners shall be responsible for all acts and actions of their Lessee(s). Lessees shall comply with this Declaration (and the Exhibits hereto), as well as any rules, regulations, restrictions and criteria adopted by the Board of Directors or the Declarant hereunder, in the same manner as an Owner, and any violation of same by a Lessee shall be treated as a violation by the Owner.

-45-                                        0862P

PLTFS 00179

ORB  5450 Pg 1154

ARTICLE XXXV

AMENDMENTS TO GOVERNMENTAL LAND USE REGULATIONS

With respect to any Parcels owned by Declarant, the Declarant
hereby reserves the right to amend at any time, and from time to
time, the Development Order, the Master Site Development Plan, the
City's Zoning and/or Comprehensive Plan designation, and any Plat
of public record, without any approval, consent, or joinder of any
Owner, any lienholder, or the Association. In the event that the
applicable governmental body requires the approval, consent and/or
joinder of any Owner, lienholder, or the Association, then the
Declarant is hereby appointed as the agent for such parties for
purposes of signing any and all documents required by such
governmental body in connection therewith, and/or such parties
shall be required to sign the approvals, consents, and joinders
necessary to carry out the amendments hereunder. In connection
with any amendments under this Article, the Declarant and/or the
Association shall have the authority to alter, realign, or convey
a portion of the Common Areas, provided that the rights of the
Owners are not significantly and adversely affected by such
alteration, realignment or conveyance.

ARTICLE XXXVI

MORTGAGEE CONSENT AND ACCEPTANCE

In the event that The Chase Manhattan Bank (N.A.), a national
banking association (the "Bank") or other person acquires the fee
simple title to the Property (or part thereof) upon the
foreclosure of the Bank's "Mortgage" (described in the following
sentence) or upon delivery of a deed in lieu of foreclosure of the
Bank's "Mortgage", the Bank or Person acquiring such title shall
be entitled to exercise any and/or all of the rights of Declarant
under this Declaration, and Declarant shall execute the documents
necessary to evidence such rights. For purposes of this Article
the Bank's "Mortgage" shall mean and refer to the Building Loan
Mortgage (and all amendments thereto) described in the Consent and
Acceptance of Mortgagee annexed to this Declaration.

-46-                                    0862P

PLTFS 00180

ORB 5450 Pg 1155

ARTICLE XXXVII

EFFECTIVE DATE OF THIS DECLARATION

This Declaration shall become effective upon its recordation in the Public Records of the County.

IN WITNESS WHEREOF, the Declarant has caused this Declaration to be duly executed by a General Partner this _14th_ day of October, 1987.

SIGNED, SEALED AND DELIVERED
IN THE PRESENCE OF:

QUANTUM ASSOCIATES

(1) _David Kelly_                    By: _____
(2) _Debra J. Cain_                      Edward B. Deutsch,
                                         as General Partner

STATE OF FLORIDA        )
                        ) ss.
COUNTY OF BROWARD        )

The foregoing instrument was acknowledged before me this _14th_ day of October, 1987, by EDWARD B. DEUTSCH, as General Partner of QUANTUM ASSOCIATES, A Florida General Partnership, on behalf of the Partnership.

_____
Notary Public
My Commission expires:

NOTARY PUBLIC STATE OF FLORIDA
MY COMMISSION EXP. APR 24,1988
BONDED THRU GENERAL INS. UND.

(SEAL)

-47-                                    08620

ORB. 5450 PG 1156

## JOINDER AND ACCEPTANCE OF ASSOCIATION

FOR GOOD AND VALUABLE CONSIDERATION, receipt whereof is hereby acknowledged, QUANTUM PARK PROPERTY OWNERS' ASSOCIATION, INC., a Florida nonprofit corporation, hereby agrees to accept all of the benefits and all of the duties, responsibilities, obligations, and burdens imposed upon it by the provisions of this Declaration and exhibits attached hereto.

IN WITNESS WHEREOF, QUANTUM PARK PROPERTY OWNERS' ASSOCIATION, INC., a Florida nonprofit corporation, has caused these presents to be duly signed in its name by its President, this 14th day of October, 1987.

SIGNED, SEALED AND DELIVERED            QUANTUM PARK PROPERTY
PRESENCE OF:                            OWNERS' ASSOCIATION, INC.

(1) _____            By: _____
                                           Its President

(2) _____               (CORPORATE SEAL)


STATE OF FLORIDA        )
                        ) SS.
COUNTY OF BROWARD       )

The foregoing instrument was acknowledged before me this 14th day of October, 1987, by EDWARD B. DEUTSCH, as President of QUANTUM PARK PROPERTY OWNERS' ASSOCIATION, INC., a Florida nonprofit corporation, on behalf of the corporation.

_____
Notary Public

(NOTARIAL IMPRESSION            My Commission Expires:
 SEAL)
                                NOTARY PUBLIC STATE OF FLORIDA
                                MY COMMISSION EXP. APR 24,1989
                                BONDED THRU GENERAL INS. UND.

-48-                                0862P

ORB 5450 Pg 1157

## CONSENT AND ACCEPTANCE OF MORTGAGEE

FOR GOOD AND VALUABLE CONSIDERATION, receipt whereof is hereby acknowledged, The Chase Manhattan Bank (N.A.), a national banking association, the owner and holder of that certain Building Loan Mortgage recorded in Official Records Book 4696, Page 58, in the Public Records of Palm Beach County, hereby consents to and accepts the terms and provisions of the foregoing Declaration of Protective Covenants, and consents to the recording of said Declaration in the Public Records of Palm Beach County.

WITNESSES:

(1) _____

(2) _____

THE CHASE MANHATTAN BANK (N.A.), A National Banking Association

By: _____
Its Vice President
Edward Shevlin, Jr.

STATE OF _New York_ )

COUNTY OF _____ )

The foregoing instrument was acknowledged before me this _13th_ day of _OCT._ , 1987, by _Edward Shevlin, Jr._ as Vice President of THE CHASE MANHATTAN BANK (N.A.), a national banking association, on behalf of said Association.

_____
Notary Public

(NOTARY SEAL)

My Commission Expires:

CATHERINE INDIMINE
Notary Public, State of New York
No. 41-4885110
Qualified in Queens County
Commission Expires April 8, 1989

-49-

0862P

PLTFS 00183

ORB **5450** Pa **1158**

101487-3
1885P

ALL OF THE PROPERTY PLATTED PURSUANT TO THAT CERTAIN PLAT OF QUANTUM PARK AT BOYNTON BEACH, P.I.D. PLAT NO. 1-A, RECORDED IN PLAT BOOK 57, AT PAGES 180 AND 181, IN THE PUBLIC RECORDS OF PALM BEACH COUNTY.

AND

ALL OF THE PROPERTY PLATTED PURSUANT TO THAT CERTAIN PLAT OF QUANTUM PARK AT BOYNTON BEACH, P.I.D. PLAT NO. 1, RECORDED IN PLAT BOOK 57, AT PAGES 182 AND 183, IN THE PUBLIC RECORDS OF PALM BEACH COUNTY.

AND

ALL OF THE PROPERTY PLATTED PURSUANT TO THAT CERTAIN PLAT OF QUANTUM PARK AT BOYNTON BEACH, P.I.D. PLAT NO. 2, RECORDED IN PLAT BOOK 57, AT PAGES 184 AND 185, IN THE PUBLIC RECORDS OF PALM BEACH COUNTY.

AND

ALL OF THE PROPERTY PLATTED PURSUANT TO THAT CERTAIN PLAT OF QUANTUM PARK AT BOYNTON BEACH, P.I.D. PLAT NO. 4, RECORDED IN PLAT BOOK 57, AT PAGES 186 THROUGH 188, INCLUSIVE, IN THE PUBLIC RECORDS OF PALM BEACH COUNTY.

AND

ALL OF THE PROPERTY PLATTED PURSUANT TO THAT CERTAIN PLAT OF QUANTUM PARK AT BOYNTON BEACH, P.I.D. PLAT NO. 5, RECORDED IN PLAT BOOK 57, AT PAGES 189 AND 190, IN THE PUBLIC RECORDS OF PALM BEACH COUNTY.

AND

ALL OF THE PROPERTY PLATTED PURSUANT TO THAT CERTAIN PLAT OF QUANTUM PARK AT BOYNTON BEACH, P.I.D. PLAT NO. 6, RECORDED IN PLAT BOOK 57, AT PAGES 191 THROUGH 193, INCLUSIVE, IN THE PUBLIC RECORDS OF PALM BEACH COUNTY.

AND

ALL OF THE PROPERTY PLATTED PURSUANT TO THAT CERTAIN PLAT OF QUANTUM PARK AT BOYNTON BEACH, P.I.D. PLAT NO. 7, RECORDED IN PLAT BOOK 57, AT PAGES 194 AND 195, IN THE PUBLIC RECORDS OF PALM BEACH COUNTY.

AND

ALL OF THE PROPERTY PLATTED PURSUANT TO THAT CERTAIN PLAT OF QUANTUM PARK AT BOYNTON BEACH, P.I.D. PLAT NO. 8, RECORDED IN PLAT BOOK 57, AT PAGES 196 AND 197, IN THE PUBLIC RECORDS OF PALM BEACH COUNTY.

AND

A PARCEL OF LAND LYING IN THE SOUTHWEST ONE-QUARTER (SW 1/4) OF SECTION 16, TOWNSHIP 45 SOUTH, RANGE 43 EAST, COUNTY OF PALM BEACH, STATE OF FLORIDA AND MORE PARTICULARLY DESCRIBED AS FOLLOWS: COMMENCING AT THE WEST ONE-QUARTER (W 1/4) CORNER OF SAID SECTION 16; THENCE SOUTH 88°28'32" EAST ALONG THE NORTH LINE OF THE SOUTHWEST ONE-QUARTER (SW 1/4) OF SAID SECTION 16 A DISTANCE OF 706.07 FEET; THENCE SOUTH 01°31'28" WEST A DISTANCE OF 120.92 FEET TO THE SOUTH RIGHT-OF-WAY LINE OF N.W. 22ND AVENUE, AS SAID RIGHT-OF-WAY IS DESCRIBED IN DEED RECORDED IN OFFICIAL RECORD BOOK 2228 PAGE 577 OF THE PUBLIC RECORDS OF SAID COUNTY AND THE POINT OF BEGINNING; THENCE SOUTH 86°17'07" EAST ALONG SAID SOUTH RIGHT-OF-WAY LINE A DISTANCE OF 607.72 FEET TO THE WEST RIGHT-OF-WAY LINE OF THE SEABOARD ALL FLORIDA RAILWAY

EXHIBIT "A"

PLTFS 00184

ORB 5450 Ps 1159

RIGHT-OF-WAY; AS SAID RIGHT-OF-WAY LINE IS DESCRIBED IN FINAL JUDGMENT (TRACT ONE) OF THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT OF FLORIDA, PALM BEACH COUNTY, RECORDED IN MINUTES CIRCUIT COURT, NO. 14 AT PAGE 470, AND DATED APRIL 15, 1926; THENCE SOUTH 14°08'00" WEST ALONG SAID WEST RIGHT-OF-WAY LINE A DISTANCE OF 1,188.51 FEET TO THE SOUTH LINE OF THE NORTHWEST ONE-QUARTER (NW 1/4) OF THE SOUTHWEST ONE-QUARTER (SW 1/4) OF SAID SECTION 16; THENCE NORTH 88°46'25" WEST ALONG SAID SOUTH LINE A DISTANCE OF 472.10 FEET TO THE EAST RIGHT-OF-WAY LINE OF HIGH RIDGE ROAD AS SAID RIGHT-OF-WAY IS SHOWN ON THE PLAT OF QUANTUM PARK AT BOYNTON BEACH, P.I.D. PLAT. NUMBER 6, THENCE ALONG SAID EAST RIGHT-OF-WAY LINE THROUGH THE FOLLOWING 4 NUMBERED COURSES AND DISTANCES.

1) NORTH 14°10'59" EAST A DISTANCE OF 343.76 FEET TO THE BEGINNING OF A CURVE CONCAVE TO THE WEST HAVING A RADIUS OF 1,600.00 FEET AND A CENTRAL ANGLE OF 14°42'16".

2) NORTHERLY ALONG THE ARC OF SAID CURVE A DISTANCE OF 410.63 FEET TO A POINT OF TANGENCY.

3) NORTH 00°31'17" WEST A DISTANCE OF 416.77 FEET.

4) NORTH 46°36'48" EAST A DISTANCE OF 36.64 FEET TO THE POINT OF BEGINNING.

AND

A PARCEL OF LAND LYING IN SECTION 17, TOWNSHIP 45 SOUTH, RANGE 43 EAST, COUNTY OF PALM BEACH, STATE OF FLORIDA AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTH ONE-QUARTER (N 1/4) CORNER OF SAID SECTION 17; THENCE NORTH 88°18'28" EAST ALONG THE NORTH LINE OF SAID SECTION 17 A DISTANCE OF 1/15.65 FEET TO THE EAST LINE OF THE WEST ONE-HALF (W 1/2) OF THE NORTHEAST ONE-QUARTER (NE 1/4) OF SAID SECTION 17; THENCE SOUTH 00°03'05" EAST ALONG SAID EAST LINE A DISTANCE OF 54.00 FEET TO A POINT ON THE SOUTH RIGHT-OF-WAY LINE OF MINER ROAD AS SAID RIGHT-OF-WAY IS DESCRIBED IN DEED RECORDED IN OFFICIAL RECORD BOOK 4594, PAGE 1451 OF THE PUBLIC RECORDS OF SAID COUNTY. SAID POINT ALSO BEING THE POINT OF BEGINNING; THENCE CONTINUE ALONG SAID EAST LINE WITH A BEARING OF SOUTH 00°03'05" EAST A DISTANCE OF 2871.44 FEET TO THE EAST-WEST ONE-QUARTER (EW 1/4) LINE OF SAID SECTION 17; THENCE NORTH 89°08'39" EAST ALONG SAID EAST-WEST ONE-QUARTER (EW 1/4) LINE, A DISTANCE OF 356.29 FEET TO A POINT ON THE NORTHERLY RIGHT-OF-WAY LINE OF NORTHWEST 22ND AVENUE AS SAID RIGHT-OF-WAY IS DESCRIBED IN DEEDS RECORDED IN OFFICIAL RECORD BOOK 1738, PAGE 1686 AND OFFICIAL RECORD BOOK 4594, PAGE 1454 OF THE PUBLIC RECORDS OF SAID COUNTY, SAID POINT BEING ON AN ARC OF A CURVE CONCAVE SOUTHERLY, (A RADIAL LINE PASSING THROUGH SAID POINT BEARS NORTH 14°51'50" WEST) THENCE TRAVERSING ALONG SAID NORTHERLY RIGHT-OF-WAY LINE THROUGH THE FOLLOWING 2 NUMBERED COURSES AND DISTANCES:

1) SOUTHWESTERLY ALONG THE ARC OF SAID CURVE HAVING A RADIUS OF 1,691.02 FEET AND THROUGH A CENTRAL ANGLE OF 23°22'04" A DISTANCE OF 689.68 FEET TO A TANGENT LINE;

2) SOUTH 46°46'06" WEST ALONG SAID TANGENT LINE A DISTANCE OF 614.71 FEET TO THE EASTERLY RIGHT-OF-WAY LINE OF QUANTUM BOULEVARD AS SAID BOULEVARD IS SHOWN ON THE PLAT OF QUANTUM PARK AT BOYNTON BEACH, PLAT NO. 2, THENCE, TRAVERSING ALONG THE RIGHT-OF-WAY LINE OF SAID QUANTUM BOULEVARD AS SAID RIGHT-OF-WAY IS SHOWN ON SAID PLAT THROUGH THE FOLLOWING 11 NUMBERED COURSES AND DISTANCES:

1) NORTH 88°13'54" WEST A DISTANCE OF 35.36 FEET;

2) NORTH 43°13'54" WEST A DISTANCE OF 22.77 FEET TO THE BEGINNING OF A CURVE CONCAVE TO THE EAST HAVING A RADIUS OF 450.00 FEET AND A CENTRAL ANGLE OF 62°13'54";

-2-

1885P

ORB 5450 PG 1160

3) NORTHEASTERLY ALONG THE ARC OF SAID CURVE A DISTANCE OF 488.77 FEET TO A POINT OF TANGENCY;

4) NORTH 19°00'00" EAST A DISTANCE OF 620.00 FEET TO THE BEGINNING OF A CURVE CONCAVE WESTERLY HAVING A RADIUS OF 688.70 FEET AND A CENTRAL ANGLE OF 58°00'00";

5) NORTHWESTERLY ALONG THE ARC OF SAID CURVE A DISTANCE OF 697.17 FEET TO A POINT OF TANGENCY;

6) NORTH 39°00'00" WEST A DISTANCE OF 230.00 FEET TO THE BEGINNING OF A CURVE CONCAVE TO THE SOUTH HAVING A RADIUS OF 550.00 FEET AND A CENTRAL ANGLE OF 131°54'17";

7) WESTERLY AND SOUTHERLY ALONG THE ARC OF SAID CURVE A DISTANCE OF 1266.10 FEET TO A POINT OF TANGENCY;

8) SOUTH 09°05'43" WEST A DISTANCE OF 280.00 FEET TO THE BEGINNING OF A CURVE CONCAVE WESTERLY HAVING A RADIUS OF 6,887.50 FEET AND A CENTRAL ANGLE OF 03°28'30";

9) SOUTHWESTERLY ALONG THE ARC OF SAID CURVE A DISTANCE OF 417.73 FEET TO A POINT OF TANGENCY;

10) SOUTH 12°34'13" WEST A DISTANCE OF 287.98 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHWESTERLY HAVING A RADIUS OF 450.00 FEET AND A CENTRAL ANGLE OF 67°39'59";

11) SOUTHWESTERLY ALONG THE ARC OF SAID CURVE A DISTANCE OF 531.45 FEET TO THE CENTERLINE OF THE LAKE WORTH DRAINAGE DISTRICT E-4 CANAL AS SAID CANAL IS DESCRIBED IN DEED RECORDED IN OFFICIAL RECORD BOOK 4788, PAGE 1983 OF THE PUBLIC RECORDS OF SAID COUNTY;

THENCE, DEPARTING FROM THE RIGHT-OF-WAY OF SAID QUANTUM BOULEVARD AND TRAVERSING ALONG THE CENTERLINE OF SAID E-4 CANAL THROUGH THE FOLLOWING 5 NUMBERED COURSES AND DISTANCES;

1) NORTH 07°10'49" WEST A DISTANCE OF 190.52 FEET TO THE BEGINNING OF A CURVE CONCAVE EASTERLY HAVING A RADIUS OF 750.00 FEET AND A CENTRAL ANGLE OF 19°45'02";

2) NORTHEASTERLY ALONG THE ARC OF SAID CURVE A DISTANCE OF 258.53 FEET TO A POINT OF TANGENCY;

3) NORTH 12°34'13" EAST A DISTANCE OF 271.47 FEET TO THE BEGINNING OF A CURVE CONCAVE WESTERLY HAVING A RADIUS OF 6,500.00 FEET AND A CENTRAL ANGLE OF 02°28'30";

4) NORTHERLY ALONG THE ARC OF SAID CURVE A DISTANCE OF 394.23 FEET TO A POINT OF TANGENCY;

5) NORTH 09°05'43" EAST A DISTANCE OF 1812.49 FEET TO THE WESTERLY PROLONGATION OF THE SOUTH RIGHT-OF-WAY LINE OF SAID MINER ROAD;

THENCE TRAVERSING ALONG SAID WESTERLY PROLONGATION AND THE SOUTH RIGHT-OF-WAY LINE OF MINER ROAD THROUGH THE FOLLOWING 5 NUMBERED COURSES AND DISTANCES;

1) NORTH 89°16'21" EAST A DISTANCE OF 148.15 FEET TO THE BEGINNING OF A CURVE CONCAVE TO THE NORTH HAVING A RADIUS OF 2,384.00 FEET AND A CENTRAL ANGLE OF 07°50'43";

2) EASTERLY AND NORTHERLY ALONG THE ARC OF SAID CURVE A DISTANCE OF 322.32 FEET TO A TANGENT LINE;

3) NORTH 81°25'38" EAST ALONG SAID TANGENT LINE A DISTANCE OF 446.45 FEET TO THE BEGINNING OF A CURVE CONCAVE TO THE NORTH HAVING A RADIUS OF 2,246.00 FEET AND A CENTRAL ANGLE OF 07°50'43";

-3-

1885P

ORB 5450 Pg 1161

4)   EASTERLY ALONG THE ARC OF SAID CURVE A DISTANCE OF 307.54 FEET
     TO A TANGENT LINE;

5)   NORTH 89°16'21" EAST ALONG SAID TANGENT LINE A DISTANCE OF
     773.50 FEET TO THE POINT OF BEGINNING.

LESS AND EXCEPT THE FOLLOWING DESCRIBED PARCEL:

A parcel of land lying in Section 17, Township 45 South, Range 43
East, County of Palm Beach, State of Florida, and more
particularly described as follows:

Commencing at the North one-quarter (N 1/4) corner of said Section
17; thence, South 89° 16' 21" West along the North line of the
Northwest one-quarter (NW 1/4) of said Section 17 a distance of
621.66 feet to the East right-of-way line of the Lake Worth
Drainage District Equalizing Canal E-4 as said right-of-way is
described in Deed recorded in Official Record Book 1732, Page 612
of the Public Records of said County; thence, South 09° 05' 43"
West along said East right-of-way line a distance of 160.35 feet
to the proposed South R/W line of Miner Road and the point of
beginning; thence, continue South 09°05'43" West along the East
right-of-way line of said E-4 Canal a distance of 842.77 feet;
thence, South 80°54'17" East a distance of 216.01 feet; thence,
North 67°00'13" East a distance of 318.88 feet; thence, South
13°21'37" East along the North prolongation of a radial line a
distance of 402.52 feet to a point on the arc of a curve, concave
to the South having a radius of 550.00 feet and a central angle of
64°21'37"; thence, Easterly and Southerly along the arc of said
curve a distance of 617.91 feet to a point of cusp; thence, North
39°00'00" West a distance of 215.00 feet to the beginning of a
curve concave to the East having a radius of 650.00 feet and a
central angle of 65°30'00"; thence, Northerly along the arc of
said curve a distance of 743.01 feet to a point of reverse curve,
which is a curve concave westerly having a radius of 1320.00 feet
and a central angle of 25°27'25"; thence, Northwesterly along the
arc of said curve a distance of 586.48 feet to a point on the
proposed South R/W line of Miner Road, said right-of-way line
being a curve concave to the North having a radius of 2246.00
feet, and a central angle of 04°14'12", a radial line passing
through said point bears North 06°26'09" West; thence, westerly
along the arc of said curve a distance of 126.88 feet to a tangent
line; thence, South 81°25'38" West a distance of 446.45 feet to
the beginning of a curve concave to the North having a radius of
2354.00 feet and a central angle of 07°50'43"; thence, Westerly
along the arc of said curve a distance of 322.32 feet to a tangent
line; thence, South 89°16'21" West along said tangent line a
distance of 59.35 feet to the point of beginning, lessing and
excepting therefrom a parcel of wetlands lying in Section 17,
Township 45 South, Range 43 East, County of Palm Beach, State of
Florida; and more particularly described as follows:

Commencing at the North one-quarter (N 1/4) corner of said Section
17; thence South 89° 16' 21" West along the North line of the
Northwest one-quarter (NW 1/4) of said Section 17 a distance of
621.66 feet to the East right-of-way line of The Lake Worth
Drainage District Equalizing Canal E-4 as said right-of-way is
described in Deed recorded in Official Record Book 1732, Page 612
of the Public Records of said County; thence, South 09° 05' 43"
West along said East right-of-way line a distance of 160.35 feet
to the proposed South R/W line of Miner Road thence, North-
89°16'21" East along said South right-of-way line a distance of
59.35 feet to the beginning of a curve concave to the North having
a radius of 2354.00 feet and a central angle of 05°46'27"; thence,
Easterly along the arc of said curve a distance of 237.23 feet to
the point of beginning; thence, traversing along the limits of a
parcel representing 3.800 acres of wetlands through the following
19 numbered courses and distances:

-4-                                          1885P

PLTFS 00187

ORB 5450 Pg 1162



1)   South 00° 43' 39" East a distance of 303.48 feet;
2)   South 81° 07' 33" East a distance of 62.13 feet;
3)   South 70° 01' 59" East a distance of 84.82 feet;
4)   North 62° 25' 00" East a distance of 53.48 feet;
5)   North 72° 12' 44" East a distance of 38.78 feet;
6)   North 52° 49' 36" East a distance of 20.10 feet;
7)   North 44° 39' 48" West a distance of 33.89 feet;
8)   North 35° 31' 41" East a distance of 22.44 feet;
9)   South 50° 44' 13" East a distance of 12.29 feet;
10)  North 87° 58' 28" East a distance of 308.11 feet;
11)  North 02° 05' 16" West a distance of 67.86 feet;
12)  North 05° 07' 19" West a distance of 40.44 feet;
13)  North 11° 00' 23" West a distance of 56.23 feet;
14)  North 15° 02' 07" West a distance of 30.08 feet;
15)  North 24° 04' 50" West a distance of 28.20 feet;
16)  North 47° 17' 34" West a distance of 5.22 feet;
17)  North 46° 03' 51" West a distance of 126.85 feet to the
     South right-of-way line of said Miner Road;
18)  South 51° 25' 38" West along said South right-of-way line
     a distance of 340.09 feet to the beginning of a curve
     concave to the North having a radius of 2354.00 feet and
     a central angle of 02° 04' 16";
19)  Westerly along the arc of said curve a distance of 85.10
     feet to the point of beginning.

-5-

1885E

PLTFS 00188