

**ORDERED in the Southern District of Florida on January 5, 2023.**



**Erik P. Kimball, Judge**
**United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| In re: | Case No. 20-16686-EPK |
| | Chapter 7 |
| QUANTUM PARK PROPERTY OWNERS' ASSOCIATION, INC., | |
| Debtor. | |
| _____/ | |
| ROBERT C. FURR, as Trustee, | |
| Plaintiff, | |
| v. | Adv. Proc. No. 22-01190-EPK |
| OLEN PROPERTIES CORP., *et al.*, | |
| Defendants. | |
| _____/ | |

<u>ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS</u>

This Order addresses the *Motion to Dismiss Adversary Proceeding With Prejudice* filed by defendants Boynton Lodge No. 236 Free & Accepted Masons of Florida, High Ridge Investments, LLC, and West Quantum Plaza Owners Association, Inc. [ECF No. 336], and

*Parkside's Renewed Motion to Dismiss First Amended Complaint With Prejudice* filed by defendant Parkside Townhomes Homeowners' Association, Inc. [ECF No. 391].[1] The Court has carefully considered the motions to dismiss, as well as the responses and reply relating thereto, in light of the Amended Complaint. ECF Nos. 313, 376, 454, and 457.

Carmax Auto Superstores, Inc. filed a joinder to Parkside's motion to dismiss [ECF No. 427]. Carmax was dismissed as a defendant in this action. The joinder at ECF No. 427 will be denied as moot.

The motions to dismiss seek dismissal of the Amended Complaint [ECF No. 313] pursuant to Fed. R. Civ. P. 12(b) made applicable here by Fed. R. Bankr. P. 7012(b). The sole question for the Court is whether the Amended Complaint adequately states claims consistent with those rules and applicable law. At this stage of the litigation, under the circumstances of this case, the Court does not consider any matters beyond the four corners of the Amended Complaint and documents attached thereto in determining whether the Amended Complaint properly states claims sufficient to avoid dismissal.

Robert C. Furr filed this adversary proceeding in his capacity as chapter 7 trustee for the bankruptcy estate of debtor Quantum Park Property Owners' Association, Inc. Quantum is a Florida property owners' association incorporated in 1987 with regard to a commercial and residential development in Boynton Beach, Florida. Soon after its formation, Quantum caused to be recorded in the real property records a Declaration of Protective Covenants relating to all property within the association. Quantum's articles of incorporation, bylaws, and the Declaration are attached to the Amended Complaint as exhibits.

The plaintiff's theory of this case is straightforward. At the relevant times, the defendants owned real property in the association and were thus members of Quantum, or

---

[1] For ease of reference, the Court will refer to the movants in ECF No. 336, collectively, as "Boynton", and will refer to the movant in ECF No. 391 as "Parkside".

2

are successors in interest to such property owners. The plaintiff alleges that certain of the defendants, with others, attempted to terminate the Declaration, at a time when Quantum had significant debts, thereby eliminating Quantum's ability to assess and collect from property owners within the association and pay those debts. The plaintiff seeks to hold defendants liable for the resulting loss to Quantum by three independent means.

In count I of the Amended Complaint, the plaintiff seeks relief under fraudulent transfer theories, citing 11 U.S.C. § 548 and 11 U.S.C. § 544(b) incorporating Florida Statutes chapter 726. The plaintiff asks the Court to avoid the termination of the Declaration as an intentional or a constructive fraudulent transfer, and then enter judgment against the defendants under 11 U.S.C. § 550 in an aggregate amount sufficient to pay all of Quantum's debts. The plaintiff posits that, but for termination of the Declaration, Quantum could have assessed the defendants as property owners or their successors in interest under the Declaration in amounts sufficient to pay all of Quantum's debts, including legal fees and expenses incurred by Quantum in the collection effort. In count I, the proposed measure of damages is the entirety of the debts owed by Quantum including the contingent legal fees incurred in this adversary proceeding. It is important to note that the claims presented in count I do not require the plaintiff to exercise any rights under the Declaration itself. The requested money judgments are based on the alleged loss of value to Quantum resulting from termination of the Declaration, and arise under operation of 11 U.S.C. § 550 rather than under any contractual provision of the Declaration.

In count II of the Amended Complaint, the plaintiff seeks a declaratory judgment that the plaintiff, as chapter 7 trustee for Quantum, may assess the defendants pursuant to the Declaration in amounts sufficient to pay all of Quantum's debts including legal fees incurred in this adversary proceeding. Under the plaintiff's claims as presented, avoidance of the termination of the Declaration under count I is not a pre-requisite to the relief requested in

3

count II.  The plaintiff alleges that the Declaration was not "legitimately" terminated.  Count II seeks a declaration that the plaintiff may rely on the Declaration to assess the defendants in spite of the alleged termination of the Declaration.

In count III of the Amended Complaint, the plaintiff seeks money judgments against the defendants for their portion of Quantum's debts incurred while each such defendant or its predecessor in interest owned property within the association, plus legal fees incurred in this adversary proceeding.  The plaintiff alleges that each defendant is personally liable for its proportionate share of such debts as a result of language in the definition of the term "Common Expenses" in the Declaration.  The plaintiff alleges that the defendants' personal liability arose as Quantum incurred debts and does not depend on assessment.  The relief requested in count III does not rely on avoidance of the termination of the Declaration under count I.

## Count I

Both Boynton and Parkside argue that termination of the Declaration is not a transfer as defined in either federal or Florida fraudulent transfer law and so there can be no fraudulent transfer claim.  The Court disagrees.  According to the Amended Complaint, the Declaration was recorded in the real property records and imposed covenants and restrictions on all of the property within the association for the benefit of Quantum.  Based on the Amended Complaint and the attached Declaration, it appears that Quantum had an actual property interest in each parcel within the association in the form of covenants that ran with the land.  The Declaration provided Quantum with the power to assess owners within the association resulting in liens on the owners' properties.  The power to assess owners and the covenants in favor of Quantum are valuable property rights.  Relinquishment of those rights by termination of the Declaration constitutes a transfer under both federal and Florida fraudulent transfer law.  *See* 11 U.S.C. § 101(54)(D); Florida Statutes § 726.102(14).

The termination of the Declaration is not simply the foreseeable cessation of rights under a contract, as Parkside argues. The Declaration did not expire under its terms. It would have continued indefinitely for successive ten-year terms unless designated parties, including Quantum's own board, took action to terminate the Declaration, as plaintiff alleges they did. That those parties had the legal ability to terminate the Declaration under its terms does not negate the fact that the termination is a transfer for purposes of applicable fraudulent transfer law. It does not matter that Quantum, acting through the chapter 7 trustee, cannot by itself rejuvenate the Declaration under Florida statutes, as that is not the remedy the plaintiff seeks. Instead, among other relief, the plaintiff seeks to avoid the termination of the Declaration as a fraudulent transfer, which would have the legal effect of voiding the termination and placing Quantum and the defendants in the status they held prior to termination.

Parkside argues that the Amended Complaint fails to identify any property received by the defendants. This is both untrue and a moot point. According to the allegations in the Amended Complaint, termination of the Declaration removed covenants burdening the defendants and their properties, a literal transfer of property rights. But to obtain judgments under count I, the plaintiff need not show that the fraudulent transfer resulted in defendants receiving any specific property. The plaintiff must show only that the defendants are the entities "for whose benefit" the Declaration was terminated, and then the plaintiff is entitled to judgments against the defendants equal to the value given up by Quantum by termination of the Declaration. 11 U.S.C. § 550(a)(1). The measure of damages is the value of property relinquished by Quantum, not the value of property received by the defendants.

In its reply, Parkside makes a related argument that is so obtuse as to display either a complete misunderstanding of bankruptcy law or a purposeful mangling of the plaintiff's claims in this adversary proceeding. Stating the obvious, that the defendants' properties are

5

not property of this bankruptcy estate, Parkside posits that this suit is an attempt by the plaintiff to "use" non-estate property owned by the defendants to pay allowed claims against the estate. Parkside argues this exceeds the trustee's authority under 11 U.S.C. § 704(1).[2]

To the contrary, the claims presented and remedies sought by the plaintiff in this case are wholly within his power as trustee. The plaintiff alleges that the Declaration was terminated either with actual intent to defraud or its termination was constructively fraudulent, that termination of the Declaration was for the benefit of the defendants, and that defendants may be held liable for the value given up by the debtor under well-worn provisions of the Bankruptcy Code. In the alternative, the plaintiff seeks a declaration that he may assess the defendants and their properties in spite of the alleged termination of the Declaration. Finally, the plaintiff argues that the defendants are personally liable to the debtor under the Declaration, in spite of its termination and without the need for assessment. The claims presented in this adversary proceeding are either claims exclusively provided to bankruptcy trustees (count I), or claims owned by Quantum when this case was filed and thus included in property of the estate under 11 U.S.C. § 541(a) (counts II and III). Any sum or property recovered in this action would become property of the estate under 11 U.S.C. § 541(a). This adversary proceeding is about collecting from parties that the plaintiff argues have obligations to the bankruptcy estate, for the purpose of maximizing the bankruptcy estate for the benefit of its creditors. This is exactly the trustee's duty under the Bankruptcy Code. Under Parkside's absurd theory, any time a bankruptcy trustee pursues a defendant on an avoidance theory or to collect a debt owing to the debtor, that would be an improper attempt to use non-estate assets to pay allowed claims against the estate.

---

[2] The Court is mindful that the arguments addressed in this and certain of the following paragraphs implicate all three counts of the Amended Complaint, but addresses them here as Parkside raised them under the heading of count I in its reply.

6

Perhaps Parkside is confused by the fact that the plaintiff's proposed measure of damages is a sum equal to the total valid debts of Quantum. Yet this makes sense in light of the claims presented. In count I, as a result of termination of the Declaration, Quantum gave up the ability to assess property owners to pay its debts. The judgment requested under 11 U.S.C. § 550(a)(1) is for the value given up by Quantum, equal to the assessments necessary to pay all of its financial obligations. Likewise, whether via assessments consistent with declaratory relief requested in count II, or by collection under an alleged contractual provision of the Declaration under count III, the same damages apply.

Also in its reply, Parkside argues that this adversary proceeding is an improper attempt to collect obligations owing to Quantum's creditors rather than obligations owing to Quantum or its bankruptcy estate. Parkside argues that the plaintiff lacks standing to pursue claims of Quantum's creditors against the defendants. Similarly, Boynton argues that "the Declaration does not create a private right for creditors to impose personal liability on the Property Owners for the Association's debts." Again, it is hard to believe Parkside and Boynton so blatantly misunderstand the plaintiff's claims. According to the plaintiff, Quantum has unpaid debts. Those debts are Quantum's obligations, allegedly incurred at the direction of its management, not the personal obligations of the defendants. Plaintiff argues that the defendants were and remain liable to Quantum under fraudulent transfer theories, under the terms of the Declaration in spite of the alleged termination and without the need to assess, or as a result of Quantum's continuing ability to assess the defendants and their properties, in each case in amounts sufficient to permit Quantum to pay its debts. That the measure of damages the plaintiff seeks to collect from the defendants is equal to the aggregate of Quantum's valid debt obligations does not turn this action into an attempt to collect from the defendants on behalf of Quantum's creditors. To point out the weakness of movants' theory, any time a bankruptcy trustee pursues a reimbursement claim held by a

7

debtor, such a claim would be deemed an improper attempt to collect a debt on behalf of a non-debtor entity.

In its reply, Parkside repeatedly argues that creditors of the bankruptcy estate have no absolute right to payment in full of their claims, as though this is the basis for the plaintiff's adversary proceeding. The Court notes that, in light of trustee fees under 11 U.S.C. § 326(a) and likely other administrative expenses not covered by the relief requested in this adversary proceeding, even if the plaintiff was completely successful in this action it would not generate sufficient funds to pay all allowed unsecured claims in full.

In its reply, Parkside argues that the defendants have limited liability as equity owners of Quantum and that the plaintiff's suit is an impermissible attempt to hold them liable as a result of their equity status. Again, Parkside ignores the legal theories presented in the Amended Complaint. The plaintiff seeks remedies against the defendants, alternatively, on the theory that they benefitted by a fraudulent transfer, that the plaintiff may assess the defendants under the Declaration in spite of its alleged termination, and that the defendants are liable to Quantum under the Declaration in spite of its alleged termination and without the need for assessments. None of these theories for relief is based solely on the defendants' status as equity owners of Quantum.

Boynton disputes that Quantum's debts would have been subject to assessment and collection under the Declaration. Boynton argues that at the time the Declaration was terminated, Quantum had no authority to assess for payment of Quantum's attorneys' fee debts in particular. This argument is not supported by the Declaration itself. The Declaration provides for the possibility of Special Assessments for a variety of matters including "costs, expenses, and liabilities not anticipated at the time of the adoption of the annual budget." Boynton argues that all of Quantum's debts were foreseeable at the time annual budgets were established and so cannot be the subject of Special Assessments. But

8

the Special Assessment provisions of the Declaration do not require that liabilities be unforeseeable, only that they were actually not anticipated.  According to the Amended Complaint, most of Quantum's debts are for legal fees arising from hard fought litigation.  It seems unlikely that such fees could have been reasonably anticipated ahead of time, and so they could be the subject of Special Assessments.  This is not to say that Special Assessment is the only method Quantum could have used to collect funds to pay such debts.  Under section 10.3 of the Declaration, Regular Assessments may be used to pay all costs, expenses, and liabilities incurred by Quantum, without regard to when such expenses were incurred.  While that same section goes on to provide a list of examples of such costs, expenses, and liabilities, that list is not exclusive.  In the end, all of Quantum's debts, including for attorneys' fees, could be the subject of assessments under both section 10.3 and section 10.4 of the Declaration.

Both Boynton and Parkside argue that the Declaration had terminated under Florida's Marketable Record Title Act, Florida Statutes chapter 712, prior to the termination complained of in the Amended Complaint, and so the plaintiff can present no claim arising from Quantum's subsequent termination of the Declaration as it was a nullity.  The argument that the Declaration was already terminated by operation of law would require the Court to consider evidence not before the Court, such as whether any related notice or amendment was timely filed in the real property records, and is best left to summary judgment or trial.

Boynton argues that count I lacks sufficient allegations of insolvency and lack of reasonably equivalent value.  The plaintiff alleges that, prior to termination of the Declaration, Quantum had the ability to assess to pay its debts and was solvent, but that it was rendered insolvent by termination of the Declaration because Quantum was left with no ability to raise funds to pay its substantial obligations.  The plaintiff alleges that Quantum

9

received nothing in exchange for termination of the Declaration. These allegations are sufficient.

Parkside argues that the claims in count I are not ripe because the plaintiff is required to assess the defendants under the Declaration before he can seek to recover or collect from them. Again, Parkside misunderstands the nature of the claims presented in count I. If the Court rules that termination of the Declaration was a fraudulent transfer and avoids the termination, then the plaintiff would be entitled to relief under 11 U.S.C. § 550. That relief may include a money judgment against the parties benefitted by the transfer in an amount equal to the value given up by Quantum. In count I, the plaintiff does not seek to hold the defendants liable under the Declaration itself. The plaintiff seeks a judgment against them, under section 550(a). There is no need for the plaintiff to establish assessments for the Court to award that remedy. That the proposed measure of damages is what Quantum could have assessed against property owners if the Declaration was not terminated does not mean that the plaintiff must actually use the assessment process to obtain the relief requested.

Parkside argues that count I of the Amended Complaint combines claims under theories of actual and constructive fraudulent transfer, and under both 11 U.S.C. § 548 and § 544 incorporating Florida Statutes § 726. Parkside complains that it is "without notice as to the nature of Plaintiff's allegations." It is customary that each legal basis for avoidance of a fraudulent transfer be presented in a separate count, followed by an additional count seeking relief under section 550 as appropriate, and the Court typically prefers that approach. However, in this case the allegations of fact presented in the Amended Complaint are sufficient to support each fraudulent transfer theory for relief contained in count I. Given Parkside's own arguments in its motion and reply, it is apparent that Parkside understands the plaintiff's claims and can answer them.

### Count II

Both Parkside and Boynton argue that there is no present controversy that merits declaratory relief as requested in count II of the Amended Complaint. It appears that movants misunderstand the relief requested in count II. Rather than seek declaratory judgment conditioned on avoidance of termination of the Declaration as a fraudulent transfer, the plaintiff argues that the Declaration permits the chapter 7 trustee, on behalf of Quantum, to assess the defendants for Quantum's obligations that arose while they or their predecessors owned property in the association in spite of the attempted termination of the Declaration. Based on the movants' own detailed arguments, there is a present and actual controversy with regard to the plaintiff's rights in this regard. For the same reason, Parkside's ripeness, jurisdiction, and standing arguments are without merit. The plaintiff properly seeks declaratory relief on the issue.

### Count III

With regard to count III of the Amended Complaint, Boynton argues that there are no facts alleged to support the claim. This is not true. In the Amended Complaint, the plaintiff points to a provision of the Declaration that he claims supports direct, personal liability of the defendants to Quantum without the need for assessments. The plaintiff describes the nature and extent of Quantum's debts, and then asks the Court to hold defendants liable to the bankruptcy estate in an aggregate amount sufficient to permit payment of those debts.

Parkside's ripeness, jurisdiction, and standing arguments relating to count III are without merit. Parkside misconstrues the claim presented in count III, suggesting that it is predicated on avoidance of the termination of the Declaration and the assessment methodology therein, but this is not the case. Plaintiff alleges there is a basis for holding the defendants liable under the Declaration, separate from the assessment provisions and in spite of the alleged termination of the Declaration. That claim, to the extent valid, is ripe for

determination, the Court has jurisdiction over the claim and the parties, and the plaintiff has standing to pursue it.

Boynton argues that, assuming the Declaration remains binding on the defendants, the defendants can only be held liable to Quantum if Quantum first establishes assessments on defendants and their property pursuant to the Declaration.  As Boynton argues, "establishing an Assessment is an absolute prerequisite to seeking personal liability for amounts due to the Association."  Although difficult to parse amongst the confused thicket of arguments presented in connection with count III, it appears Parkside makes a similar argument under the guise of ripeness.

The Court agrees that the plaintiff is unable to obtain relief under count III.[3]  From the text of the Declaration as a whole, Quantum had no ability to collect from any property owner other than via Regular Assessments and Special Assessments under the procedures provided in the Declaration.  The definition of Common Expenses does not by itself provide a basis for claims against the defendants separate and apart from claims established through the assessment processes.  For these reasons, the motions to dismiss will be granted in part and count III dismissed with prejudice.

## Attorneys' Fees

Parkside and Boynton ask the Court to strike the requests for attorneys' fees from the Amended Complaint.  The plaintiff responds that the Declaration provides a contractual right to attorneys' fees, points to relevant allegations in the Amended Complaint, and argues that the attorneys' fee provision in the Declaration survives its alleged termination.  The Amended

---

[3] Because this issue can be determined solely from consideration of the text of the Declaration, which is attached to and considered part of the Amended Complaint, the Court may consider this argument in a dispositive fashion at the motion to dismiss stage. *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007); *see also* Fed. R. Civ. P. 10(c), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7010.

Complaint, as presented, is sufficient to support a claim for attorneys' fees. Related factual disputes are best left to summary judgment or trial. The motion to strike will be denied.

### Additional Arguments in Parkside's Reply

The Court has addressed several specific arguments raised in Parkside's reply. Nevertheless, a number of the arguments presented in Parkside's reply were not raised in Parkside's motion to dismiss or the plaintiff's response thereto, are thus improperly included in Parkside's reply, and are due to be stricken. The remaining arguments in Parkside's reply amount to challenges to the plaintiff's claims more appropriately left to summary judgment or trial.

### Order

In light of the foregoing, the Court hereby ORDERS and ADJUDGES as follows:

1. The *Motion to Dismiss Adversary Proceeding With Prejudice* [ECF No. 336] is GRANTED IN PART, to the extent that count III of the Amended Complaint is DISMISSED WITH PREJUDICE, and is otherwise DENIED.

2. *Parkside's Renewed Motion to Dismiss First Amended Complaint With Prejudice* [ECF No. 391] is GRANTED IN PART, to the extent that count III of the Amended Complaint is DISMISSED WITH PREJUDICE, and is otherwise DENIED.

3. *Carmax Auto Superstores, Inc.'s Notice of Joinder to Parkside Townhomes Homeowners' Association, Inc.'s Renewed Motion to Dismiss First Amended Complaint With Prejudice* [ECF No. 427] is DENIED as moot.

###

Copy to:
Alexis S. Read, Esq.

*Alexis S. Read, Esq. is directed to serve a copy of this order on all appropriate parties and shall file a certificate of service with the Court.*