

ORDERED in the Southern District of Florida on March 9, 2023.



**Erik P. Kimball, Judge**
**United States Bankruptcy Court**
_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| **In re:** | **Case No. 20-16686-EPK** |
| | **Chapter 7** |
| **QUANTUM PARK PROPERTY OWNERS'** | |
| **ASSOCIATION, INC.,** | |
| Debtor. | |
| _____/ | |
| **ROBERT C. FURR, Chapter 7 Trustee,** | |
| Plaintiff, | |
| v. | **Adv. Proc. No. 22-01190-EPK** |
| **OLEN PROPERTIES CORP.,** *et al.*, | |
| Defendants. | |
| _____/ | |

### ORDER RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT

Parkside Townhomes Homeowners' Association, Inc., a defendant in this action, seeks partial summary judgment. ECF No. 504. Relying on federal and state common law as well as 11 U.S.C. § 550, Parkside argues that the plaintiff's recovery under count I of the Amended Complaint [ECF No. 313] must be reduced, for the benefit of all defendants, as a result of the

plaintiff's receipt of insurance proceeds that Parkside says are in partial satisfaction of the same harm that forms the basis of this adversary proceeding.

The Court has reviewed Parkside's motion and the related response and reply. ECF Nos. 621, 635. In ruling on the motion, the Court considers Fed. R. Bankr. P. 7056, incorporating Fed. R. Civ. P. 56, and applicable case law.

Robert C. Furr filed this adversary proceeding in his capacity as chapter 7 trustee for the bankruptcy estate of debtor Quantum Park Property Owners' Association, Inc. Quantum is a Florida property owners' association incorporated in 1987 with regard to a commercial and residential development in Boynton Beach, Florida. Soon after its formation, Quantum caused to be recorded in the real property records a Declaration of Protective Covenants relating to all property within the association. Quantum's articles of incorporation, bylaws, and the Declaration are attached to the Amended Complaint as exhibits.

The plaintiff's theory of this case is straightforward. At the relevant times, the defendants owned real property in the association and were thus members of Quantum, or are successors in interest to such property owners. The plaintiff alleges that certain of the defendants, with others, terminated the Declaration, at a time when Quantum had significant debts, thereby eliminating Quantum's ability to assess and collect from property owners within the association and pay those debts. The plaintiff seeks to hold defendants liable for the resulting loss to Quantum by three independent means.

In count I of the Amended Complaint, the plaintiff seeks relief under fraudulent transfer theories, citing 11 U.S.C. § 548 and 11 U.S.C. § 544(b) incorporating Florida Statutes chapter 726. The plaintiff asks the Court to avoid the termination of the Declaration as an intentional or a constructive fraudulent transfer, and then enter judgment against the defendants under 11 U.S.C. § 550 in an aggregate amount equal to the value of the rights relinquished when the Declaration was terminated. The plaintiff posits that, but for

2

termination of the Declaration, Quantum could have assessed the defendants under the Declaration in amounts sufficient to pay all of Quantum's debts. The plaintiff seeks judgments sufficient to pay all of the debts owed by Quantum plus the contingent legal fees incurred in this adversary proceeding. Any such judgments would be allocated among the defendants, likely in the manner provided under the Declaration, and so their liability would not be joint and several.

Contrary to Parkside's argument in the present motion, the claims presented in count I do not require the plaintiff to exercise any rights under the Declaration itself. The requested money judgments are based on the value of the rights Quantum relinquished as a result of termination of the Declaration, and arise under operation of 11 U.S.C. § 550 rather than under any provision of the Declaration.

Contrary to the plaintiff's argument in connection with the present motion, nowhere in the Amended Complaint does the plaintiff seek to include in any judgment under count I the entire administrative cost of Quantum's chapter 7 bankruptcy case. The plaintiff does seek to include the contingent legal fees incurred in this adversary proceeding, but that is as far as count I goes.

In count II of the Amended Complaint, the plaintiff argues that the Declaration was not "legitimately" terminated and seeks a declaratory judgment that the plaintiff, as chapter 7 trustee for Quantum, may assess the defendants pursuant to the Declaration in amounts sufficient to pay all of Quantum's debts plus the legal fees incurred in this adversary proceeding. In other words, the plaintiff asks the Court to declare that the Declaration remains in full force. This is similar to a plaintiff asking for a declaratory judgment that a contract was not terminated. Under the plaintiff's claims as presented, avoidance of the

termination of the Declaration under count I is not a pre-requisite to the relief requested in count II. Indeed, count II does not in any way reference fraudulent transfer law.[1]

In count III of the Amended Complaint, the plaintiff seeks money judgments against the defendants for Quantum's debts incurred while each such defendant or its predecessor in interest owned property within the association, plus legal fees incurred in this adversary proceeding. The plaintiff alleges that each defendant is personally liable for its proportionate share of Quantum's debts as a result of language in the definition of the term "Common Expenses" in the Declaration. The plaintiff alleges that the defendants' personal liability arose as Quantum incurred debts and does not depend on assessment. The relief requested in count III does not rely on avoidance of the termination of the Declaration under count I.

By order entered January 5, 2023, the Court granted Parkside's motion to dismiss count III of the Amended Complaint, ruling that the referenced provisions of the Declaration do not support the relief requested. ECF No. 517. The Court denied Parkside's motion to dismiss counts I and II. On count I, among other things, the Court ruled that termination of the Declaration relinquished important property rights and was thus a "transfer" under applicable fraudulent transfer law. The Court ruled that the declaratory judgment requested in count II relates to an existing dispute—whether the Declaration remains extant—and does not seek a prospective or advisory ruling as Parkside argued.[2] Parkside sought leave to appeal the Court's denial of motions to dismiss counts I and II, but the District Court has yet

---

[1] Quantum had not assessed property owners to pay its then outstanding debts at the time the Declaration was terminated. Thus, the bankruptcy estate does not now include any claims against the defendants under the assessment provisions of the Declaration. In order to establish new assessments, corporate action would be required under the Declaration. The plaintiff, as trustee, does not presently have the ability to effectuate assessments even if the Declaration remains extant as the plaintiff argues. If successful under count II, the plaintiff would need to obtain authority to operate Quantum's business under 11 U.S.C. § 721 for the purpose of establishing and collecting assessments. Any such motion must be filed in the main bankruptcy case on notice to all creditors. The Court makes no ruling here whether such a request would be granted.

[2] No one sought dismissal of count II on other substantive grounds.

4

to rule on that request. ECF No. 582. No one sought leave to appeal the Court's order dismissing count III.

This case proceeds under counts I and II. Count II seeks only declaratory relief. Count I contains the only requests for money judgments, under 11 U.S.C. § 550(a). The plaintiff alleges that the principal component of value relinquished by termination of the Declaration is Quantum's ability to assess property owners to pay its debts. Because Quantum's chapter 7 bankruptcy petition followed closely after the termination of the Declaration, those same debts are at issue in Quantum's bankruptcy case. Any judgments entered under count I depend on the total claims actually allowed against the bankruptcy estate. While the deadline for filing proofs of claim passed long ago, filed claims remain subject to objection. Each time a claim is disallowed in whole or in part, the potential judgments under count I are reduced.

In their briefs on the present motion, the parties argue extensively with regard to the value of the rights relinquished by termination of the Declaration, and thus the potential judgments under count I. The plaintiff argues that the aggregate value of the rights relinquished is "equal to the amounts necessary to pay creditors . . . net of all expenses incurred in avoiding the transfer . . . including administrative expenses in this bankruptcy." To accomplish this, the aggregate judgments under count I would include the fees and expenses of the plaintiff's special litigation counsel in this adversary proceeding, all fees and expenses in every other suit filed by the plaintiff as trustee in this bankruptcy case, all fees and expenses incurred by the plaintiff's primary bankruptcy counsel in the main bankruptcy case, and the plaintiff's statutory trustee fee for disbursements to creditors. In other words, the plaintiff asks the Court to hold the defendants in this adversary proceeding responsible for the entire cost of this bankruptcy case with the goal of paying unsecured creditors in full.

5

There are two problems with the plaintiff's position regarding the aggregate amount of any potential judgments under count I.

First, the plaintiff does not seek such broad relief in the Amended Complaint. While the Amended Complaint does request that judgments under count I include the expenses of this adversary proceeding, it does not seek to include <u>all</u> administrative expenses of this bankruptcy case.[3]

Second, 11 U.S.C. § 550(a) does not appear to support the breathtaking relief the plaintiff argues here. If successful in avoiding the termination of the Declaration as a fraudulent transfer, the plaintiff would be entitled to judgments equal to the value of the rights relinquished measured as of the date of the transfer. *See* 4 Norton Bankr. L. & Prac. 3d § 70:4 (Jan. 2023 Update). The question would be—what was the value given up on the date of the transfer?[4] In this case, that value would include Quantum's valid debts at the time the Declaration was terminated, because Quantum otherwise could have assessed property owners to pay those debts. In addition, because the Declaration permitted Quantum to assess for all of its operating expenses, including fees and expenses incurred in pursuing collection of assessments, arguably the plaintiff could include the customary costs incurred by Quantum in collecting assessments. Thus, it is possible that judgments under count I could exceed the total of allowed claims in this case by some amount necessary, as of the

---

[3] While it is possible to interpret certain language in the Amended Complaint to seek judgments under count I sufficient to permit 100% payment to all creditors in this bankruptcy case, after payment of all administrative expenses, that text certainly is not clear enough to put the defendants on notice of such an extreme remedy.

[4] There are circumstances where the Court will consider post-transfer appreciation and depreciation in the value of something fraudulently transferred to set the amount of a judgment under 11 U.S.C. § 550(a). 5 Collier on Bankruptcy P 550.02 (16th ed. 2022). In this case, the value of the rights relinquished by Quantum is not subject to market influence or otherwise variable. The aggregate amount of valid claims against Quantum at the time of termination of the Declaration, while yet to be ascertained in a final way, is determinable as part of this action. Indeed, the allowance and disallowance of claims is at the core of this Court's subject matter jurisdiction. In this particular case, there is no reason to stray from the transfer date for determination of the value of the transfer.

transfer date, to collect proper assessments. This latter sum would not be in the nature of fee shifting, but only an attempt to ascertain the true value of the assessment rights relinquished through termination of the Declaration. But this does not mean the plaintiff could recover the entire administrative costs of this bankruptcy case, or even the actual costs of pursuing this particular adversary proceeding. As in any other chapter 7 case, the estate bears the costs of collecting assets for eventual distribution, including the cost of litigating avoidance claims.

It is not necessary for the Court to rule at this time whether the plaintiff's theory of value, for purposes of potential judgments under 11 U.S.C. § 550(a), will carry the day. The question presented here is narrow. Must any judgments awarded under count I be reduced as a result of the plaintiff's recovery from an insurer and, if so, by how much?

Separate from and prior to this suit, the plaintiff made demand on Quantum's officers and directors and on the insurance company that provided liability coverage in their favor. The plaintiff alleged that Quantum's directors and officers breached their fiduciary duty by terminating the Declaration. The plaintiff demanded payment of damages equal to all of Quantum's debt obligations and the costs of pursuing collection—exactly the judgments requested in count I. The plaintiff does not dispute that the claims pursued in count I of the Amended Complaint and the claims pursued against Quantum's directors, officers, and their insurer arise from and are intended to remedy the same alleged harm.

The plaintiff settled with the insurer and the Court approved that settlement. ECF 326. As a result of the settlement, the insurer paid $425,000 to the plaintiff. The Court authorized the plaintiff to pay $170,000 of that sum to contingent fee counsel. Thus, the bankruptcy estate received a net of $255,000 from settlement with the insurer.

The plaintiff and Parkside cite a number of decisions in hopes of guiding the Court on the question whether the defendants are entitled to a reduction equal to the gross amount

7

the plaintiff received from the insurer or the net amount. None of the cited case law is exactly on point and the Court was unable to find specific guidance on this unique question. In ruling here, the Court relies on the customary tenets of equity and its experience in allocating liability among responsible parties.

The plaintiff sought to hold the insurer liable for the entire harm resulting from termination of the Declaration, just as the plaintiff seeks to hold the defendants in this action responsible for the same harm. If the insurer and defendants were both held responsible, they would be liable to the bankruptcy estate in such a way that the plaintiff could obtain only one full recovery. But the defendants and the insurer could not be jointly and severally liable as the plaintiff's claims against them arise from different acts and are presented under different legal theories.

When parties are held jointly and severally liable for a common act, such as joint tortfeasors, payment by one reduces the liability of others in the full amount paid. It does not matter whether, for example, the judgment plaintiff must use some of the recovered funds to pay legal fees to collect from others. To rule otherwise would be to hold one such defendant liable for the costs of pursuing another, an inequitable result. This case must be distinguished from such a case. While the claims against the insurer and the defendants both arise from termination of the Declaration, they could not be liable for each other's acts. There is no right of contribution between them. When the plaintiff received payment from the insurer, it did not partly extinguish a common liability as there is no common liability. But that payment did reduce the alleged harm that the estate suffers as a result of termination of the Declaration, in the amount of net funds actually obtained by the estate. For this reason, the defendants are entitled to a reduction of their potential liability under count I, but only in the net amount actually received by the plaintiff from the insurer, meaning $255,000.

For the foregoing reasons, it is ORDERED and ADJUGED as follows:

1. Parkside's motion for partial summary judgment [ECF No. 504] is GRANTED to the extent provided in this Order.

2. Any judgment entered in this adversary proceeding in count I under 11 U.S.C. § 550(a) will be reduced by a ratable portion of the sum of $255,000, allocated among the defendants in a manner to be determined after trial.

###

Copies Furnished To:

Alexis S. Read, Esq.

*Alexis S. Read, Esq. is directed to serve a conformed copy of this Order on all appropriate parties and file a certificate of service.*